SECURITY LIFE INSURANCE CO. *v.* SCHWARTZ.

1. INSURANCE — LIFE INSURANCE — FALSITY IN APPLICATION — EVIDENCE — SUFFICIENCY.

In a suit by a life insurance company for the cancellation of a policy on the ground that questions in the application were answered falsely by insured, a decree dismissing the bill and awarding defendant the full amount of the policy under her cross-bill, *held*, justified by the record.

2. COSTS — EXPERT WITNESSES — FEE ALLOWABLE — PREVAILING PARTY.

Where one day's attendance at court by defendant's expert medical witnesses would have been sufficient, the amount of costs to be taxed against plaintiff for such purpose under Act No. 404, Pub. Acts 1919 (Comp. Laws Supp. 1922, § 12557), will be limited to one day's attendance at $50 a day each.

Appeal from Washtenaw; Sample (George W.), J. Submitted October 11, 1922. (Docket No. 82.) Decided December 29, 1922.

Bill by the Security Life Insurance Company

On effect of honest mistake in answer as to health of insured, warranted by him to be true, see notes in 53 L. R. A. 193; 15 L. R. A. (N. S.) 1277.

against Minnie C. Schwartz for the cancellation of a policy of insurance and to enjoin an action at law. Defendant filed a cross-bill for enforcement of the policy. From a decree for defendant, plaintiff appeals. Modified and affirmed.

*Cavanaugh & Burke* and *Henry C. Bogle (Arthur S. Lytton,* of counsel), for plaintiff.

*Henry B. Graves* and *Mark L. Rowley (Arthur Brown,* of counsel), for defendant.

MCDONALD, J.   The plaintiff's bill is filed against the defendant as beneficiary under a policy of insurance on the life of one August Schwartz for the purpose of having the policy canceled and of restraining the defendant from instituting proceedings to enforce payment under it.   It is the theory of the bill that in the application for insurance the insured made material representations which were false and fraudulent, but which were relied on by the company, and that therefore the policy is void and should be so declared; that in the application he falsely represented that he was in good health, that he had never been afflicted with severe headaches, dizziness, palpitation of the heart, heart disease of other kinds, dropsy, chronic cough, shortness of breath, indigestion, jaundice or rheumatism; that he falsely represented that he had not been treated by any physician, except Doctor Eaton, for the last five years previous to the making of the application.   On the hearing the circuit judge dismissed the plaintiff's bill and upon a cross-bill decreed that the defendant recover the full amount of the policy.   From the decree entered the plaintiff has appealed.

The question involved is whether the statements in the application were false, and if false were they made with fraudulent intent, or, if not with such intent,

221—Mich.—32.

whether they materially affected the acceptance of the risk or the hazard assumed.

Act No. 256, Pub. Acts 1917, pt. 3, chap. 2, § 17 (Comp. Laws Supp. 1922, § 9100 [161]), relating to life and accident insurance policies, reads as follows:

"The falsity of any statement in the application for any policy covered by this chapter shall not bar the right to recovery thereunder unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer."

It was the theory of the bill that the statements made in the applications were false and were made with actual intent to deceive. If the testimony supports the claim that prior to the making of the application the insured was afflicted with all or any of the serious ailments enumerated in the bill, and which he did not disclose to the plaintiff, it goes without saying that there can be no recovery under this policy. The issue presented is one of fact.

The policy was issued October 16, 1920. The insured died at University hospital in Ann Arbor on the 10th of May, 1921, of chronic valvular disease of the heart. At the time the policy was issued the insured was 47 years of age. He had resided in Pellston, Michigan, with his family for 18 years. Part of that time he was a carpenter and a millwright, but at the time he made application for the policy he was a manufacturer of potash, a business in which he had been engaged for 12 years.

Witnesses, whose testimony we see no reason to discredit, testify that in the making of potash he performed labor which could only be performed by a man of good health. He carried large buckets of ashes, handled heavy barrels of potash, and was constantly engaged in work of such a character as to test his strength and power of endurance. In the fall he

was accustomed to go hunting. Witnesses say that on these occasions he made long tramps with them, carried heavy loads and did the same work performed by the other men without any apparent physical discomfort. That in the season of 1918 he shot a deer weighing about 170 pounds and dragged it by hand into camp, a distance of half a mile. That he was regarded as a "cast iron man," "the bull of the woods." That if he could not shoot a rabbit he tried to run it down, and that when exerting himself in this way he did not show any shortness of breath or physical weariness other than was natural for a man of normal health. There was much testimony of this character from neighbors and business men of Pellston, who apparently were without interest in the case.

At Douglas Lake, close by Pellston, there is maintained during the summer an engineering camp of the University of Michigan. Doctor C. B. Stouffer was medical superintendent of the camp. He knew Schwartz during the summers of 1914, 1915 and 1917. He testifies that Schwartz was of robust physical condition; that he saw him lift heavy trunks and do other work about the camp without injurious effect or shortness of breath. Professor Wisler, a teacher in the engineering department of the University of Michigan, attended the camp and knew Schwartz during the summers of 1913, 1914, 1916 and 1919. He saw him do heavy work and had the same impression of his physical condition as had Doctor Stouffer. Doctor Tiffany, a medical examiner for the plaintiff company, made a physical examination of the insured at the time of the issuance of the policy. He was sent to Pellston by the company for that purpose. In his examination he found no evidence of any of the diseases with which it is charged the insured was afflicted. If he had any organic disease it was not apparent at that time. Doctor Tiffany also testified that he had formerly lived

in Pellston and knew Schwartz, and that his impression of him was that he was a man able to perform and endure the hardest kind of manual labor. In view of the doctors' testimony and the physical activities of Mr. Schwartz during the years immediately preceding the application for insurance, it is quite improbable that he could have been afflicted with all or any of the diseases enumerated in the bill of complaint. To a man of average intelligence, it would seem physically impossible that one could live and actively engage in heavy work while having all of these diseases which plaintiff claims this man had.

It is a fact, however, that within eight months of the time of the issuance of the policy the insured died of valvular disease of the heart. In the absence of any intervening cause it would seem that he must have had that disease or some symptoms of it at the time he made the application. The testimony furnishes a very reasonable explanation for the presence of the disease, which resulted in his death. In 1920 he had a severe attack of the "flu" for which he was treated by Doctor Eaton, a fact made known to the plaintiff in the application. Following this in January, 1921, his potash plant burned. It is claimed that he ran from his home to the fire and worked hard under tremendous pressure from noon until 6 o'clock endeavoring to save the property, which was not insured. He returned home and from that time showed all the symptoms of the disease which caused his death a few months later. It was the theory of the defendant based on the judgment of some of the medical experts, that this condition was brought about by the combined effects of the influenza and the mental anxiety and physical exertion at the time of the fire. This theory of the origin of the heart trouble is borne out by the fact that Doctor Tiffany, who examined him a few months before the fire, found his heart normal,

and that Doctor Eaton, who examined him shortly after the fire, discovered the valvular trouble.

We have carefully read this rather voluminous record and have given the plaintiff credit for all of the testimony tending to support its theory of the case. Passing the question as to the competency of a large part of the testimony of the doctors at the hospital and of Doctor Moorman, who treated the insured professionally, we are convinced, as was the circuit judge, that in making his application Mr. Schwartz made no statements with actual intent to deceive, and that prior to the issuance of the policy he was not afflicted with any such serious ailments as to materially affect the acceptance of the risk or the hazard assumed.

Objection is made to that provision of the decree awarding $100 a day for two days' attendance for each of the medical experts sworn by the defendant. Since the enactment of Act No. 404 of the Public Acts of 1919 (Comp. Laws Supp. 1922, § 12557), such fees are permitted to be taxed by the prevailing party. We see no occasion, however, for the actual presence of these witnesses at the trial for a longer period than one day. We think the amount awarded by the circuit judge is excessive, and that a reasonable allowance would be $50 a day each for one day's attendance.

As to the fees awarded to the two witnesses the decree should be modified. In all other respects it is affirmed, with costs to the defendant.

FELLOWS, C. J., and WIEST, CLARK, BIRD, SHARPE, and STEERE, JJ., concurred. MOORE, J., did not sit.