MUTUAL LIFE INSURANCE CO. OF NEW YORK *v.* GELEYNSE.

1. INSURANCE—OSTEOPATH IS PRACTITIONER WITHIN MEANING OF APPLICATION FOR INSURANCE.

A question in an application for a life insurance policy asking for the names of physicians or practitioners who had prescribed for or treated applicant, or whom he had consulted in the past five years for any ailment, serious or not serious, included osteopaths as well as regular physicians, in view of the fact that to the average layman they are all doctors, and that 2 Comp. Laws 1915, 6724 *et seq.*, and section 6740 *et seq.* treat osteopaths and chiropractics as practitioners.

2. SAME—APPLICANT SHOULD EXERCISE GOOD FAITH IN ANSWERING QUESTIONS.

An applicant for insurance should exercise toward the company the same good faith which may be rightly demanded of it, since the relationship demands fair dealing by both parties.

3. SAME—FAILURE TO STATE FACT OF TREATMENT BY OSTEOPATH WARRANTS CANCELLATION OF POLICY—GOOD FAITH NO EXCUSE FOR FAILURE TO STATE KNOWN FACTS.

Where an applicant for life insurance was required to give the names of physicians or practitioners who had treated him within the past five years, his failure to give the name of an osteopath who had given him 15 treatments only a short time before the application was signed may not be excused on the ground that the illness for which he was treated was not serious and that his representations were made in good faith, since the application called for a statement of facts which the insurer was entitled to know, and failure to state them warrants cancellation of the policy; nor is the policy saved by Comp. Laws Supp. 1922, § 9100 [161].

Appeal from Genesee; Black (Edward D.), J. Submitted January 4, 1928. (Docket No. 34.) Decided February 14, 1928.

[1]Life Insurance, 37 C. J. § 179 (Anno); 18 L. R. A. (N. S.) 352; 14 R. C. L. 1074; 3 R. C. L. Supp. 337; [2]Id., 37 C. J. § 170 (Anno); [3]Life Insurance, 37 C. J. § 179.

Bill by the Mutual Life Insurance Company of New York against Mary Geleynse for the cancellation of a policy of insurance. From a decree dismissing the bill, plaintiff appeals. Reversed, and decree entered for plaintiff.

*Miller, Canfield, Paddock & Stone,* for plaintiff.

*George W. Cook,* for defendant.

This bill is filed to cancel a policy of insurance on the life of Dingenis Geleynse, husband of defendant, on the ground of misrepresentation of material facts in its procurement. After the death of Mr. Geleynse, plaintiff learned of facts which it claimed voided the policy, tendered back the premiums, and filed this bill. The representations appear in the application dated November 21, 1924, a photostatic copy of which was attached to the policy, as answers to questions therein found, as follows:

"16. What illnesses, diseases, injuries and surgical operations have you had since childhood?
Name of disease, etc., Fever (unknown cause).
Number of attacks, 1.
Date of each, 12 yrs. ago.
Duration, 2 weeks.
Complications, None.
Any remaining effects, None.
Date of complete recovery, 12 yrs. ago.
Name of disease, etc., Amputation of 3rd, 4th and 5th fingers and outer part of hand (right).
Number of attacks. Caught in gears.
Date of each, 10 yrs. ago.
Duration, 3 months.
Complications, None.
Any remaining effects, Deformity.
Date of complete recovery, 10 yrs. ago.
"17. State every physican or practitioner who has prescribed for or treated you, or whom you have consulted in the past five years for any ailment, serious or not serious.

Name of physician or practitioner, Dr. J. G. R. Manwaring.
Address, Flint, Mich.
When consulted, 10 yrs. ago.
Nature of complaint. Give full details above under Q. 16. Amputation of part of right hand.
Name of physician or practitioner, Dr. Halligan.
Address, Flint, Mich.
When consulted, 12 yrs. ago.
Nature of complaint, Give full details above under Q. 16. Fever.
"18. Have you stated in answer to question 16 all illnesses, diseases, injuries and surgical operations which you have had since childhood?
(Ans. Yes or no.) Yes.
"19. Have you stated in answer to question 17 every physician and practitioner consulted during the past five years and dates of consultations?
(Ans. Yes. or no.) Yes.
"20. (a) Are you in good health? Yes. * * *.
"26. Have you ever raised or spat blood? No."

The proofs show and without dispute that shortly before insured made this application he had consulted and taken treatments of Dr. Freeman, an osteopathic physician, covering quite a period. He first consulted Dr. Freeman on September 17, 1924, and informed the doctor that he "had been vomiting quite frequently and a few times it was bloody." The doctor diagnosed his trouble as chronic gastritis and treated him accordingly, the treatments being on September 18, 20, 22, 25, 27, 29, October 2, 4, 6, 8, 11, 16, 18, 19, 20. Insured worked while taking the treatments. He improved under them and was advised to continue them, which advice he declined to follow. He died about a year later from cancer of the stomach. The trial judge was in serious doubts as to the proper disposition of the case, but finally entered a decree dismissing the bill.

FELLOWS, J. (*after stating the facts*). It is first insisted that as matter of law osteopaths are not

physicians, hence the answer to questions 17 and 19 are not false.    But in both questions the words "physician" and "practitioner" are used, and turning to the act regulating the practice of osteopathy (2 Comp. Laws 1915, § 6740 *et seq.*) it will be noted that they are referred to in the title as "practitioners" and in the body of the act as osteopathic "physicians." To the average layman they and the "regulars" are all doctors who are consulted in case of illness, and it is doubtful if he ever makes in his own mind the fine distinction in which we are asked to indulge.    In *People* v. *Lewis*, 233 Mich. 240 (42 A. L. R. 1337), we affirmed the conviction of a chiropractic practitioner who administered no medicine or drugs, for a violation of the medical practice act (2 Comp. Laws 1915, § 6724 *et seq.*).    It was the duty of the insured in answer to questions 17 and 19 to inform the company of consultation with and treatments by osteopathic physicians and practitioners as well as by "regulars." The average layman does not differentiate between them and in view of the form of the question we should not.

It is also insisted that the illness of insured for which Dr. Freeman treated him was not serious and that his representations were made in good faith.    Defendant's counsel relies on the following cases:    *Brown* v. *Insurance Co.*, 65 Mich. 306 (8 Am. St. Rep. 894); *Hann* v. *National Union*, 97 Mich. 513 (37 Am. St. Rep. 365); *Plumb* v. *Insurance Co.*, 108 Mich. 94; *Tobin* v. *Modern Woodmen of America*, 126 Mich. 161; *Pudritzky* v. *Supreme Lodge, K. of H.*, 76 Mich. 428; *Blumenthal* v. *Insurance Co.*, 134 Mich. 216 (104 Am. St. Rep. 604); and section 17, chap. 2, pt. 3, Act No. 256, Pub. Acts 1917 (Comp. Laws Supp. 1922, § 9100 [161]).    All of the cases were actions at law.    In the main they involved the question of whether a case was made for the jury, and likewise in

the main they involved representations of "good health" or "sound health." None of them were cases where we were required to find the facts as well as decide the law. It is quite easy to see that one may regard himself in good health, physically fit, and so honestly state, although he is as matter of fact afflicted with a fatal malady. But the consultation with a physician, the taking of 15 treatments for an ailment are facts, and facts occurring so recently before the application was made in the instant case as to make it difficult to understand how in a good-faith effort to truthfully and fully answer the questions they were overlooked. As was said by the Supreme Court of the United States in *Mutual Life Ins. Co.* v. *Hilton-Green,* 241 U. S. 613, 624 (36 Sup. Ct. 676) :

"Beyond doubt an applicant for insurance should exercise toward the company the same good faith which may be rightly demanded of it. The relationship demands fair dealing by both parties."

This was not a case of a slight cold or a little colic which did not affect the applicant's general health, and which were not sufficiently important to in any way affect the risk. Here the applicant consulted an osteopathic physician and took 15 treatments in a little over a month's time. The health of an applicant for life insurance is of vital importance to the insurer and questions to elicit information on the subject are proper to ask and should be truthfully answered.

In *Bonewell* v. *Insurance Co.,* 160 Mich. 137, Chief Justice MONTGOMERY, speaking for the court, said:

"These questions may or may not be of importance to insurance companies. They certainly have the right to make them material. In all lines of insurance the moral risk involved is regarded as of very great importance, and it cannot be said that an insurance company has not the right by its contract to make the questions which are here adverted to essential."

And in *Kane* v. *Insurance Co.*, 204 Mich. 357, Mr. Justice KUHN, who wrote for the court, said:

"Whether Kane actually knew of the false statements in his application and signed statement to the medical officer becomes immaterial, he having had them in his possession, as a part of the policies, for seven months, and it was his duty to know that the representations therein contained and which constituted the inducement for the issuance of the policies, were true.    Silence during the life of the policy has been held to be persuasive proof of fraudulent intent."

In *Metropolitan Life Ins. Co.* v. *Freedman,* 159 Mich. 114 (32 L. R. A. [N. S.] 298), it was said by Mr. Justice BROOKE, speaking for the court:

"It was Jacob's duty to *know* that the representations therein contained, and which constituted the inducement for the issuance of the ·policy, *were true,* and his silence during the life of the policy is persuasive proof of a fraudulent intent."

In the final analysis, however, we are unable to distinguish the instant case from the recent case of *Bellestri-Fontana* v. *Insurance Co.*, 234 Mich. 424. It was there said by Mr. Justice WIEST, speaking for the court:

"Whether the applicant for the insurance was aware of his stomach trouble or not was of small moment at the trial, for the evidence is conclusive that he did know he had consulted a physician about three months before and that an X-ray had been taken, and yet he represented he had not consulted a physician within five years.    He concealed a material fact by a false representation.    The insurer had a right to know that he had consulted a physician, the application called for such knowledge, and if it had been imparted the insurer could have made investigation.

"We have not overlooked section 17, chap. 2, pt. 3, Act No. 256, Pub. Acts 1917 (Comp. Laws Supp. 1922, § 9100 [161]), which provides:

" 'The falsity of any statement in the application for any policy * * * shall not bar the right to recovery thereunder unless

such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer.'

"The false statement bore a direct relation to acceptance of the risk and the hazard assumed by the insurer."

The decree appealed from must be reversed and one here entered in accordance with the prayer of the bill. Plaintiff will have costs of both courts.

NORTH, WIEST, CLARK, MCDONALD, and SHARPE, JJ., concurred.

Chief Justice FLANNIGAN and the late Justice BIRD took no part in this decision.