### CONTINENTAL CASUALTY CO. *v.* WINSOR.

1. INSURANCE—VALIDITY OF POLICY—APPLICABLE LAW UNCHANGED WHEN SUIT IS BROUGHT IN EQUITY.

    That insurance company may, by suit for cancellation of policy, evade decision of question of fact by jury as to whether insured's answer to question in application was made with intent to deceive or materially affected either acceptance of risk or hazard assumed by insurer (3 Comp. Laws 1929, § 12444), in no way changes law applicable to facts presented.

2. APPEAL AND ERROR—DE NOVO.

    Hearing on appeal of equity case is *de novo,* and burden is cast upon Supreme Court to determine issues presented.

3. INSURANCE—FRAUD—FAILURE TO STATE PAST AILMENTS—STATUTES.

    Insured's omission to state, in application for health and accident policy, that, while a student in college, he had casually consulted physicians in regard to slight and temporary ailments, from which he had fully recovered, *held,* insufficient to avoid policy (3 Comp. Laws 1929, § 12444).

As to what amounts to medical or surgical attendance or consultation within contemplation of contract of life or accident insurance, see annotation in 63 A. L. R. 846.

Appeal from Ionia; Hawley (Royal A.), J. Submitted January 21, 1932. (Docket No. 156, Calendar No. 36,255.) Decided April 4, 1932.

Bill by Continental Casualty Company, a corporation, against Carlton W. Winsor to cancel a health and accident insurance policy. Cross-bill by defendant for amount due under policy by way of weekly benefits. Decree for plaintiff. Defendant appeals. Reversed, and decree entered for defendant on cross-bill.

*Dale Souter,* for plaintiff.

*Norris, McPherson, Harrington & Waer,* for defendant.

SHARPE, J.   Pursuant to a written application made therefor, the plaintiff, on January 7, 1930, issued to defendant, a physician, a policy providing for the payment of a weekly accident indemnity of $50 and a weekly sick indemnity of $50, with a total principal sum payable in the event of death resulting from accident in the sum of $15,000. An annual premium of $152, payable semi-annually on January 7th and July 7th, was provided for. The specific agreement as to illness reads as follows:

"In the event that the insured, while this part is in force shall suffer from any bodily sickness or disease, which is contracted and begins during said time, the company will pay said weekly sickness indemnity for the period, not exceeding fifty-two consecutive weeks, during which the insured shall be totally and continuously disabled by such sickness or disease from performing each and every duty pertaining to his occupation."

In February, 1930, the defendant slipped on some steps, fell, struck on his back, and, as later appeared, sustained a fracture of his first lumbar vertebra. He at first thought his injury was nothing but bruises, and made no claim under the policy. In May following, he noticed a marked increase of fatigue, and in June, while joining in a parade, he fell, and later spent some time at a resort. He thereafter consulted several eminent doctors, ceased his professional work, and made claim for compensation under the terms of his policy. Plaintiff denied liability. Defendant brought an action therefor in the circuit court, whereupon the plaintiff filed the bill of complaint herein, alleging untruthful answers to questions in the application signed by him, amounting to fraud, which induced the issuance of the policy, and praying that it be canceled and defendant restrained from prosecuting his action at law thereon. The defendant answered, denying the right of cancellation, and by cross-bill prayed for a decree for the amount due him under the policy.

The trial court, after the submission of the proofs, held with the plaintiff, and entered a decree as prayed for in the bill of complaint, and dismissed the crossbill. Defendant has appealed.

In the application the following questions were asked and answered by the defendant as indicated:

"17. Are you now suffering from or have you ever had tuberculosis, paralysis, rheumatism, hernia, appendicitis, syphilis, internal ulcers, gall stones, epilepsy, or any chronic or periodic mental or physical ailment or disease, or are you now crippled or maimed, or have you any defect in hearing, vision, mind or body? No.

"18. Have you during the past five years had any medical or surgical advice or treatment? In (State

year) Mich. 1929 for (State cause) Boil in nose lasting (State duration) $10. Surgeon Fees.

In ............. for ............ lasting ........
In ............. for ............ lasting ........

"19. Have you ever had or ever been advised to have a surgical operation? No.

"20. Do you understand and agree to each of the following statements lettered (a) (b) and (c)? (a) That the falsity of any answer in this application for a policy shall bar the right to recovery thereunder, if such answer is made with intent to deceive or materially affects either the acceptance of the risk or the hazard assumed by the company; (b) that this proposed insurance shall not take effect until this application has been accepted by the company and the policy issued; (c) that you will pay for this policy an annual premium of $152 as follows: semi-annually $76 Jan. 7th, July 7th, (Answer 'Yes' or 'No' and if the latter give full information) Yes."

The defendant, called for cross-examination, testified that in the year 1926 he was a student in the medical department of the University of Michigan. As such he was entitled to treatment by members of the faculty free of charge, except in cases of serious illness or operations; that he had some "sinus trouble" and one day after class he consulted the professor, Dr. Furstenburg, about it and was advised to spray his nose, that he probably had a little sinus infection; that he did so, and never had a recurrence of the trouble thereafter; that about six months later he noticed a numbness in one of his hands and awkwardness in his dancing, and stopped after class and consulted the professor, Dr. Camp, about it, and was told to take some static electricity; that he went to an interne who "put some static on my right arm and on my leg a little bit * * * and that was the end of that. I never

went back," and that there was no recurrence of the numbness until after his accident. He was asked: "Your second difficulty was diagnosed as hysteria?" and answered: "I asked Doctor Camp—I said 'That must be h-y' and he laughed. I don't know what Doctor Camp's diagnosis was at the time."

Plaintiff's denial of liability is based on these two occurrences. In support of its claim that it should have been informed thereof in defendant's answer to question 18 above, it relies upon a letter written to the plaintiff's medical director by the defendant on October 4, 1930. After stating that he had been informed by plaintiff's claim agent of its denial of liability, based upon the fact that he "had an attack of sinusitis several years ago and that I also had an attack of numbness and partial loss of control of the extremities," he said:

"The diagnosis in each case was right maxillary sinusitis and hysteria, respectively. I made a complete recovery in each case and considered myself entirely well, until the onset of the present illness last spring."

He then discussed at some length the opinion of the physicians, connecting his then troubles with these occurrences, copies of which had doubtless been furnished him. He further testified that after his injury in February, 1930, above referred to, he again felt an awkwardness in his legs and numbness in his hand; that it was followed by marked fatigue; that he consulted a doctor, X-rays were taken, and the fracture above referred to was discovered. The doctor testified that he "found him suffering from what I interpret as a multiple sclerosis." He defined this as "a disease of the nervous system, the cause of which we do not know," and advised the

defendant "to cease work and to rest." He further testified that numbness in the hands and awkwardness in the gait are not necessarily symptoms of this trouble, and said that it was sometimes mistakenly diagnosed as hysteria, and that "there is no settled opinion as to what can cause multiple sclerosis."

The testimony of Dr. Camp, the professor whom defendant consulted in 1927, was taken by plaintiff by deposition. We quote therefrom:

"*Q*. Was he treated privately or in hospital?

"*A*. He was treated casually.

"*Q*. What do you mean by casually?

"*A*. He was at that time either a senior or assistant in the hospital and he came to me complaining that he had some numbness in one hand. He was worried and I examined him and decided that he did not have any occasion for worry, that it was one of the very frequent cases of the student imagining something might be wrong with him having studied the subject and we treated him with some electricity and he was all right.

"*Q*. How many times do you recall that you treated him?

"*A*. Just once. He was all cured in 20 minutes."

Section 12444, 3 Comp. Laws 1929, reads as follows:

"The falsity of any statement in the application for any policy covered by this chapter shall not bar the right to recovery thereunder unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer."

The question here presented is whether defendant's answer to question 18 was made with intent to deceive or materially affected either the acceptance of the risk or the hazard assumed by the insurer.

The trial court found that it was not made with intent to deceive, and we are satisfied that such finding was justified. But he found that the answer ''was a concealment of the real facts; or at least an omission'' to state them, and that it ''materially affected the hazard assumed by the plaintiff, or at least materially affected the acceptance of the risk.''

The record clearly discloses that at the time the application was made there had been no return of either of the slight ailments with which the defendant was suffering at the time he consulted his instructors in 1926 and 1927 and was given advice as to treatment. That he was seemingly in perfect health at the time he made the application is apparent.

The question presented is whether his ailments when at college were of such a nature as imposed upon him the duty to disclose relative to them in his application. In view of the finding of the trial court, we have set forth the evidence relating to them at some length. In *Plumb* v. *Penn Mut. Life Ins. Co.,* 108 Mich. 94, it was held (syllabus):

''To have been 'attended by a physician,' or to have 'consulted one professionally,' within those terms as used in an application for life insurance, there must have been an attendance or consultation with reference to some disease or ailment of a serious character, affecting the person's sound bodily health, and not in relation to a mere temporary indisposition, or an ailment trivial in its nature, such as all persons are liable to who are nevertheless considered to be in sound health generally.''

This holding has been cited with approval in *Rhode* v. *Metropolitan Life-Ins. Co.,* 129 Mich. 112; *Blumenthal* v. *Berkshire Life-Ins. Co.,* 134 Mich. 216 (104 Am. St. Rep. 604); *Bullock* v. *Mutual Life Ins.*

*Co.,* 166 Mich. 240; and *Woodland* v. *Liberty Life Ins. Co.,* 241 Mich. 600.   The authorities supporting this doctrine will be found collected in an annotation in 63 A. L. R. 847.

Counsel for the plaintiff urges that these were all ''actions at law in which the court was passing upon instructions to a jury.''   That an insurance company may evade decision of the question of fact by a jury by seeking cancellation in chancery in no way changes the law applicable to the facts presented. The hearing here is *de novo,* and the burden cast upon us of determining whether the ailments of the defendant were of a serious character, affecting his sound bodily health, or were so trivial as to amount to a mere temporary indisposition.

We have examined the authorities cited by counsel (*Krajewski* v. *Western & Southern Life Ins. Co.,* 241 Mich. 396; *Mutual Life Ins. Co.* v. *Geleynse,* 241 Mich. 659 [56 A. L. R. 702] ; *Metropolitan Life Ins. Co.* v. *Carter,* 252 Mich. 432, and *New York Life Ins. Co.* v. *Bahadurian,* 252 Mich. 491), and have no fault to find with the conclusions reached in them on the facts presented.   But a careful reading of the proof here submitted satisfies us that the omission of the defendant to state in the application that he advised with his instructors about his then ailments did not avoid this policy.

The decree entered will be reversed and set aside, with costs to appellant, and one may be entered here granting the defendant the relief prayed for in his cross-bill.

Clark, C. J., and McDonald, Potter, North, Fead, Wiest, and Butzel, JJ., concurred.