## Chamberlain v. National Life & Accident Ins. Co.

(Decided Nov. 30, 1934.)

CHAS. G. FRANKLIN for appellant.

WHITE & CLARK and GORDON & GORDON & MOORE for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Affirming.

Apellant sought to recover of the appellee $2,000 upon a policy of insurance issued upon the life of her husband with her as beneficiary, her petition was dismissed, and she appeals.

The issue of the policy and the payment of the premiums are admitted. The insurance company offered to return the premiums and refused to pay this claim because the policy was procured, so it says, by misrepresentations in the application made by the insured, consisting both in false answers given and in willful failures to disclose the truth, in answer to these questions:

"Have you ever had any ailment or disease of the heart or lungs? Have you ever had any ailment or disease of the skin, middle ear or eyes? Have you ever consulted a physician for any ailment, or disease, not included above?"

It is alleged that he answered the first question,

"No," and the second question, "No," and to the third question he made the following answer:

"Measles in the year 1918, scarlet fever in the year 1918, influenza in the year 1917, cold in the year 1932. Saw Dr. Baumer, Detroit, once a week ago for a cold, over it now, but have not yet returned to work."

### The Facts.

On April 11, 1932, Chamberlain signed an application for this insurance but he did not submit himself for examination that day. Three days later he saw Dr. Baumer of Detroit, Mich., who now testifies:

"He stated that for the preceding three weeks he had a persistent cough which did not respond to the ordinary medicines, which he had used; that three days previous to his coming to my office he had developed pain in his right ear, he had lost some weight and felt weak. * * * He was complaining of a discharge from his right ear, which examination showed to be a right otitis media (inflammation of the middle ear). There was a dullness on percussion and a few rales heard in his left chest, which I diagnosed as possible tuberculosis and advised him to have an X-ray and sputum examination made to ascertain the presence or absence of pulmonary tuberculosis. Mr. Chamberlain did not seem to take my suggestion very seriously and my own impression is that he never believed there was anything seriously wrong with him."

These questions and answers in Dr. Baumer's deposition are quite important:

"Q. Was Everett Hardin Chamberlain suffering from a cold at the time he consulted you on April 14, 1932? A. That might have been his impression, but he was never given to understand that it was just an ordinary cold. * * *

"Q. Did he know on the 19th day of April, 1932 that you had examined him and found five days previously that he had a possible pulmonary tuberculosis involving his left chest? A. Yes. * * *

"Q. Is is not true that when you suggested to Mr. Chamberlain that he have an X-ray examination and sputum tests made, that he did not take

this advice seriously and that he did not believe there was anything seriously wrong with him? A. Possibly so. At least that was my impression of his attitude.''

With this information in his breast, Mr. Chamberlain five days later submitted himself to the defendant's medical examiner, who propounded to him a number of questions, among which were the ones we have noted above, and again Mr. Chamberlain signed the application for this insurance.

The next we hear of Mr. Chamberlain is contained in this which is taken from the evidence of Dr. Baumer:

''He was not seen again until July 10, 1932, when he came in complaining of similar trouble as on the previous visit.''

Chamberlain continued to work until December 11, 1932, and was for part of the time apparently in good health.

Dr. John Maloney testifies he saw Mr. Chamberlain professionally on December 17, 1932; that he was then suffering from pulmonary tuberculosis of approximately seven or eight months' standing, was short of breath, unable to speak above a whisper, etc.

Dr. Albert Krohn, the superintendent of the general hospital at Detroit, testified he saw Mr. Chamberlain on December 29, 1932; that he found him suffering from acute tuberculosis, chronic right otitis media, and chronic mastoiditis, and that Chamberlain died at the hospital February 6, 1933; that while Chamberlain was at the hospital this history was obtained from him:

''Illness dated back to April, 1932, at which time patient complained of stuffy sensations in both ears and pain over antrums and frontal sinuses. Was examined by various physicians and irrigations instituted but no improvement. Around October patient noted loss of weight, cough and fever. This became worse. His right ear discharged. A physician advised Herman Keifer for X-ray. Patient has coughed up blood streaked sputum several times in past two weeks. Since onset has had frequent night sweats. Lost 30 lbs. Appetite poor. Cough is disturbing. Has had gastro-intestinal upset past two weeks and vomits occasionally. * * * He complained of pain in the right ear; examination revealed an old discharge from right ear while the mastoid region was tender to touch.''

It is stipulated that the insured submitted himself to Dr. H. A. Bush of Detroit, Mich., a physician selected by the National Life & Accident Insurance Company, on the 19th day of April, 1932, for examination, and that he was examined on said date by the said physician, who was a regular examiner for said company, who propounded to him the questions set out in said application, and who examined him in the way usual for medical examiners in their examination of applicants for life insurance, and that said examining physician did not discover any evidence of otitis media or pulmonary tuberculosis.

### The Law in This Case.

This policy was issued and delivered in Michigan, where Mr. Chamberlain was living; hence this litigation must be governed by the laws of that state, and it was proven that this is the law there. Comp. Laws 1929, sec. 12444:

"The falsity of any statement in the application for any policy covered by this chapter shall not bar the right to recovery thereunder unless such false statement was made with actual intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer."

Compare this statute with our section 639, Ky. Stats.

That this Michigan statute has been construed in the following cases by the Supreme Court of Michigan: Krajewski v. Western & Southern Life Ins. Co., 241 Mich. 396, 217 N. W. 62; Business Men's Assurance Co. v. Marriner, 223 Mich. 1, 193 N. W. 907; Mutual Life Ins. Co. of New York v. Geleynse, 241 Mich. 659, 217 N. W. 790, 56 A. L. R. 702; Bellestri-Fontana v. New York Life Ins. Co., 234 Mich. 424, 208 N. W. 427; Nat'l Life & Accident Ins. Co. v. Nagel, 260 Mich. 635, 245 N. W. 540; Bonewell v. North American Accident Ins. Co., 167 Mich. 274, 132 N. W. 1067, Ann. Cas. 1913A, 847; Security Life Ins. Co. v. Schwartz, 221 Mich. 496, 191 N. W. 216; Continental Casualty Co. v. Winsor, 258 Mich. 118, 241 N. W. 826.

We have construed our statute in Nat'l Life & Accident Ins. Co. v. Fisher, 211 Ky. 12, 276 S. W. 981, 982, to mean:

"If a representation is made, and it is untrue and material, it taints the contract whether fraudulent

or not, and, if untrue and fraudulent, it taints the contract whether material or not.''

The Michigan statute is given that same construction by the courts of that state, for it is proven in this case that it is construed to mean:

''Misrepresentations, if innocently made and immaterial to the risk, have no effect, but if such misrepresentations either were made with intent to deceive or materially affected the risk, no recovery may be had in any action on the policy. * * * The rule of law is that if the misrepresentation materially influences the insurer's judgment in accepting the risk or in fixing the premium or to put it in another way, if the misrepresentation affects the insurer's willingness to enter into the contract, then the misrepresentation is material to the risk.''

We need not make extensive quotations from the opinions put in evidence, Michigan lawyers have these opinions on their shelves and Kentucky lawyers can procure them if they wish, and one of them is available to many Kentucky lawyers in Mutual Life Ins. Co. v. Geleynse, 241 Mich. 659, 217 N. W. 790, 56 A. L. R. page 702, where they will find this statute quoted and discussed.

### The Finding.

This matter was submitted to the court without the intervention of a jury, and the facts were found more elaborately but practically as we have stated them, and the law was found to be as we have stated it.

Such a finding is equivalent to the verdict of a properly instructed jury. Southern Ry. Co. v. Frankfort Distillery Co., 233 Ky. 771, 26 S. W. (2d) 1025; Wells v. Board of Drainage Com'rs, 237 Ky. 539, 35 S. W. (2d) 886; Walker v. Ganote (Ky.) 116 S. W. 689.

### Grounds Relied on for Reversal.

The appellant argues the court found Chamberlain had a disease of his right middle ear and had tuberculosis when Dr. Rush examined him, and that such a finding is flagrantly against the evidence; but that is not what the court found. The finding is Mr. Chamberlain did not tell the company or Dr. Rush, the company's medical examiner, the truth about his condition. He told the company and Dr. Rush a different story from the one he had told Dr. Baumer five days before, and

that he did not tell the truth is what the court found, and no other finding could be made under this evidence.

It is argued Chamberlain told the truth about the physicians he had consulted. That he gave the name of Dr. Baumer, and that appellee had so alleged in its answer, and that the court erred when it found he made this answer in his finding of facts:

> "Saw doctor Bowman, Detroit, only a week ago for cold. Over it now, but has not returned to work yet."

That finding is absolutely correct, for in the application this name is given as "Bowman" and not "Baumer."

So simply conceding, without deciding, that in view of the pleadings the Insurance Company cannot be heard to say the name given was "Bowman" and not "Baumer," the stubborn fact remains he did not truthfully report to the company and its medical examiner what he had told the doctor, whatever his name was, and what that doctor had told him. In the brief filed for appellant it is said:

> "Nowhere did he represent that he 'Had never consulted any physician in regard to any disease of the heart or lungs, or any disease of the middle ear, etc.' "

That is true, he did not do so directly, but there are two ways of falsifying. One is the direct expressio falsi, and the other is the indirect suppressio veri, and Mr. Chamberlain used the latter method; he suppressed the truth. A man may accomplish a fraud by actively giving out false information, or by willfully failing to disclose the truth. The result is the same, whichever method is used. 26 C. J. p. 1069 et seq., secs. 12, 13, 14, 15, and 17.

### Question of Evidence.

We have given above the rule in Michigan for determining whether or not a misrepresentation is material. We need not determine whether that is a rule of evidence or is a rule of substantive law. If it be the former, we are not bound by it, we have our own rules of evidence; if it be the latter, we are.

The defendant in taking its depositions proved first what it would have done acting reasonably and natur-

ally, etc., if it had known the truth, then what any standard life insurance company acting reasonably and naturally, etc., would have done if it had known the truth.

In King v. O. V. F. & M. Ins. Co., 212 Ky. 770, 280 S. W. 127, we said the matter was to be determined by what other companies acting reasonably and naturally, etc., would have done. To same effect is Globe Indemnity Co. v. Daviess, 251 Ky. 442, 65 S. W. (2d) 456; Commonwealth Life Ins. Co. v. Goodknight's Adm'r, 212 Ky. 763, 280 S. W. 123; Metropolitan Life Ins. Co. v. McDonald, 246 Ky. 109, 54 S. W. (2d) 625; and Metropolitan Life Ins. Co. v. Hutson, 253 Ky. 635, 69 S. W. (2d) 742. We regard that as the correct rule, but it is shown here the rule in Michigan is *what would you have done*; but since defendant met either rule, we will not undertake to decide which rule should have been followed in this case. Moreover, the rules of evidence are not so rigorously applied where a case is tried before the judge without the intervention of a jury.

Appellant cites the case of Continental Cas. Co. v. Winsor, 258 Mich. 118, 241 N. W. 826, but that was a case where an applicant had innocently omitted to tell of consulting a doctor for a supposed sinus trouble, for a numbness in one of his hands and an awkwardness in dancing, which consultation had taken place some four years before, was presumably forgotten, the element of fraud was absent, and there was no evidence of an actual intent to deceive, which cannot be said of the application before us.

Stipcich v. Metropolitan Life Ins. Co., 277 U. S. 311, 48 S. Ct. 512, 513, 72 L. Ed. 895, the United States Supreme Court said: "Insurance policies are traditionally contracts uberrimæ fidei."

That means of the uttermost good faith. Other courts have said the same. See cases listed under footnote 65, page 1187 of 65 C. J.

An insurance company does not have to insure all applicants. It has not only the right but owes the duty to its other policy-holders to select its risks, and it has the right to set up its own standards, to avail itself of its own experience and that of others, to ask questions of the applicant, to rely upon his answers as true, and to act thereon.

Not only may it be reasonably inferred Mr. Chamberlain answered as he did because he feared the policy would not be issued if he told the truth, and made the answers which he did with an actual intention of deceiving the defendant, but the matter concealed was such that the defendant or any other company writing such policies, acting reasonably and naturally in accordance with the practice usual among such companies, would have declined the application had they known the truth; hence under the law of Michigan the plaintiff should not recover on this policy so obtained.

Judgment affirmed.