## IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**September 4, 2024**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**BOHNERT INTERNATIONAL, INC.,
NORVIN RAQUE, AND DAVID GRAESER,**
**Plaintiffs Below, Petitioners,**

**v.) No. 23-ICA-194**        (Cir. Ct. of Greenbrier Cnty. Case No. CC-13-2022-C-70)

**MOTORISTS MUTUAL INSURANCE COMPANY,**
**Defendant Below, Respondent**

### MEMORANDUM DECISION

Petitioners Bohnert International, Inc. ("Bohnert"), Norvin Raque, and David Graeser appeal the April 19, 2023, order of the Circuit Court of Greenbrier County which granted Motorists Mutual Insurance Company's ("Motorists Mutual") motion for summary judgment and determined that the subject policy of commercial general liability insurance did not provide coverage for an underlying lawsuit filed against Petitioners relating to their design, building, and installation of custom equipment for a whiskey barrel manufacturer. Respondents filed a timely response brief.[1] Bohnert, Mr. Raque, and Mr. Graeser filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Bohnert[2] is a Kentucky corporation that contracted with WV Great Barrel Company, LLC ("Barrel") in November 2017 to design, manufacture, fabricate, ship, and install a material handling system to be incorporated into Barrel's new cooperage to be built in White Sulphur Springs, West Virginia. The cooperage operation was expected to manufacture white oak barrels for the bourbon, whiskey, and rye distilling industry. Per

---

[1] Petitioners are represented by J. Zak Ritchie, Esq., Isaac R. Forman, Esq., and Kayla S. Reynolds, Esq. Respondent is represented by Lee Murray Hall, Esq., and Jason D. Bowles, Esq.

[2] Bohnert's principals are Petitioners Norvin Raque and David Graeser, who are Kentucky residents.

their contract, Bohnert agreed to deliver purchased equipment to Barrel's cooperage facility by September 1, 2019, and have it installed and operational by October 1, 2019. Bohnert was also expected to provide preventative maintenance for six months after installation.

On August 28, 2020, Barrel filed an eleven-count complaint against Petitioners relating to the performance of the contract, including causes of action for negligence, breach of contract, breach of express warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, breach of implied warranty of design-build, fraud, fraudulent transfers, individual liability piercing the corporate veil, fraudulent inducement to contract, and negligent design, engineering, installation and construction. Barrel claims that Petitioners failed to timely produce, deliver, and install the agreed-upon equipment by the contractual deadline of October 1, 2019, and that instead Petitioners delivered and installed defective equipment in the plant. Barrel claims that Petitioners' faulty workmanship caused Barrel to suffer damages, including production delays and expenses associated with necessary repairs and replacement of the equipment. Barrel also claims that after the expiration of the October 1, 2019, deadline, Bohnert and its principals fraudulently sold substantial assets and the company name to a third party to frustrate any recovery by Barrel.

After Barrel served the complaint, Bohnert tendered notice to its insurer, Motorists Mutual, through whom Bohnert had an occurrence-based Commercial General Liability ("CGL") insurance policy ("Policy"), effective from March 2018 to March 2019. The Policy was solicited through a Lexington, Kentucky insurance agency, and was purchased by Bohnert and issued by Motorists Mutual in Kentucky. The Policy insures risks in Kentucky, including Bohnert's premises, equipment, and vehicles registered and located in Kentucky, and it includes Kentucky surcharges and Kentucky-specific endorsements. It does not refer to West Virginia pricing, endorsements, structures, equipment, vehicles, or any other West Virginia risk.

The Policy provides, in pertinent part:

BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "Lawsuit" seeking those damages. However, we will have no duty to defend the insured against any "Lawsuit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion,

2

investigate any "occurrence" and settle any claim or "Lawsuit" that may result . . .

    b.  This insurance applies to "bodily injury" and "property damage" only if:

        (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory" . . .

"Occurrence" is defined as "means an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

  2.  Exclusions

    This insurance does not apply to:
    . . .

    1.  Damage To Your Work

      "Property Damage" to "your work" arising out of it or any part of it included in the "products-completed operations hazard."

      This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

"Products-completed operations hazard" is defined, in pertinent part, to include "'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work.'"

After receiving notice of the claim, Motorists Mutual disclaimed coverage, tendered a defense under a reservation of rights, and filed a declaratory judgment action in the Southern District of West Virginia, which was dismissed for lack of diversity jurisdiction. *See Motorists Mut. Ins. Co. v. Bohnert Int'l, et al.,* No. 5:22-cv-00028, 2022 WL 2657123 (S.D. W. Va. July 8, 2022). Bohnert then filed the underlying declaratory judgment action in the Circuit Court of Greenbrier County concerning Motorists Mutual's duty to defend and indemnify its insured.

The underlying suit sought the circuit court's determination as to Motorists Mutual's contractual duties regarding the application of Kentucky law to the interpretation of the Policy and Motorists Mutual's duty to defend and indemnify Bohnert in connection with the claims alleged by Barrel. The parties filed cross-motions for summary judgment on these issues. Motorists Mutual argued that Kentucky law applies to the interpretation of the

3

Policy because the Policy was formed in Kentucky and Kentucky has the more significant relationship with the insurance transaction at issue. Motorists Mutual further argued that it has no duty to defend or indemnify Bohnert under Kentucky insurance law, where the claims alleged in the underlying suit do not constitute an "occurrence" and are not covered.

Bohnert argued that Kentucky law should not apply to the interpretation of the insurance contract because Bohnert did not reasonably expect that Kentucky law would govern the Policy. Bohnert further claimed that the application of Kentucky law would violate West Virginia public policy because of its expectation that Kentucky law would not apply. Bohnert also advanced an alternative argument that, given the nature of the claims in the underlying suit, Motorists Mutual's duty to defend was triggered under both Kentucky and West Virginia law. Barrel was also permitted to submit a brief in the underlying case, and it argued that West Virginia had a more significant relationship with the case than did Kentucky, and that under West Virginia law, the claims Barrel made constituted an "occurrence" as defined in the Policy, thereby triggering a duty to defend and indemnify.[3]

The circuit court conducted a choice of law analysis, beginning with a determination that the issue should be framed as one of contract rather than tort. *Liberty Mut. Ins. Co. v. Triangle Indus. Inc.,* 182 W. Va. 580, 583, 390 S.E.2d 562, 565 (1990). ("This Court has held that the interpretation of insurance policy coverage, rather than liability, is treated as a contract question for purposes of conflicts analysis.") The court found that West Virginia adheres to the doctrine of *lex loci contractus*, holding that the law of the state where the contract was issued or to have been performed governs the interpretation of the contract. The court noted two exceptions to *lex loci contractus*: 1) if another state has a more significant relationship to the transaction and the parties; or 2) the law of the other state is contrary to the public policy of this state. *Id.*, 182 W. Va. 580, 390 S.E.2d 562, syl. Accordingly, the court found that the Policy was formed in Kentucky and that Kentucky law must govern the contract unless one of the two exceptions applied. Finding neither of the two exceptions present in the instant case, the circuit court found no coverage, no duty to defend, and granted Motorists Mutual's motion for summary judgment. It is from this order that Petitioners appeal herein.

It is well established that "[a] circuit court's entry of summary judgment is reviewed *de novo*." Syl Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). Moreover, when we review the parties' rights and obligations under an insurance contract, our review is also de novo. "Determination of the proper coverage of an insurance contract when the facts are not in dispute is a question of law." *Murray v. State Farm Fire and Cas. Co.*, 203 W. Va. 477, 482, 509 S.E.2d 1, 6 (1998). "The interpretation of an insurance contract, including the question of whether the contract is ambiguous, is a legal determination that,

---

[3] Barrel is not a party to and did not participate in this appeal.

like a lower court's grant of summary judgment, shall be reviewed *de novo* on appeal." Syl. Pt. 2, *Riffe v. Home Finders Assocs., Inc*., 205 W. Va. 216, 517 S.E.2d 313 (1999). With this standard in mind, we proceed to the parties' arguments.

On appeal, Petitioners assert three assignments of error, which we will consider out of order for efficiency and clarity. We turn first to the second assignment of error, in which the Petitioners argue that the circuit court erred by determining that Kentucky law applies to the interpretation of the Policy. Petitioners assert that the circuit court erred in this holding because it also held that Kentucky law categorically bars coverage for property damage caused by an insured's subcontractors, rendering the Policy's "Damage to Your Work" exclusion and its subcontractor exception meaningless and superfluous. Petitioners allege that this contradictory finding means that the circuit court misapplied the doctrine of reasonable expectations, a concept that "the insured is entitled to all the coverage he may reasonably expect to be provided under the policy." *Brown v. Indiana Ins. Co*., 184 S.W.3d 528, 540 (Ky. 2005). Petitioners claim that the Policy's "Damage to Your Work" exclusion and its subcontractor exception plainly communicated to Bohnert that Kentucky law would not apply, and so Bohnert had a reasonable expectation that West Virginia law would apply to this claim for coverage. Otherwise, Bohnert submits that the exclusion and its exception were included solely to entice Bohnert into obtaining illusory coverage. Bohnert further argues that West Virginia has a more significant relationship to the Policy and the underlying case than Kentucky does because the damages allegedly suffered by Barrel arose from Bohnert's conduct in West Virginia. Finally, Bohnert asserts that public policy militates in favor of applying West Virginia law because it would be an unfair practice and material breach of the duty of good faith and fair dealing for Motorists Mutual to misrepresent pertinent facts or insurance policy provisions relating to coverage. *See Knots v. Zurich Ins. Co*., 197 S.W.3d 512, 515 (Ky. 2006). Petitioners aver that Motorists Mutual did just that by including the "Damage to Your Work" and "Damage to Property" exclusions within the subcontractor exception, while simultaneously disavowing coverage in this manner.

After de novo review, we find these arguments are without merit. As correctly recognized by the circuit court, West Virginia adheres to the doctrine of *lex loci contractus*:

> In a case involving the interpretation of an insurance policy, made in one state to be performed in another, the law of the state of the formation of the contract shall govern, unless another state has a more significant relationship to the transaction and the parties, or the law of the other state is contrary to the public policy of this state.

Syl., *Liberty Mut. Ins. Co. v. Triangle Indus. Inc*., 182 W. Va. 580, 581, 390 S.E.2d 562, 563 (1990). It is undisputed that the Policy is a Kentucky policy, issued to a Kentucky corporation two years before Bohnert contracted with Barrel to perform work that gave rise

5

to the underlying case. Accordingly, Kentucky law applies, unless one of the two exceptions to the doctrine applies.

In determining which state has a more significant relationship to the transaction and the parties, courts are instructed to consider certain factors when the law is not otherwise chosen by the parties. Those include "certainty, predictability and uniformity of result" and "ease in the determination and application of the law to be applied." *Id.*, 182 W. Va. at 585, 390 S.E.2d at 567; Restatement (Second) of Conflict of Laws § 6.[4] The *Triangle* court emphasized the need for uniformity and predictability in an "increasingly complex" interstate insurance system and noted that in that case, although both West Virginia and Ohio had significant relationships to the transaction, the policy was bargained for, created, and agreed to in New Jersey by the parties. Applying the same logic in the case sub judice, the instant Policy was bargained for, created, and agreed to in Kentucky by Bohnert and Motorists Mutual. The Policy includes Kentucky endorsements and surcharges and the risks it insures are all located in Kentucky. The Policy does not explicitly contemplate any risks insured in West Virginia, and it was issued two years before Bohnert's contractual relationship with Barrel was formed. Accordingly, we find that Kentucky has the most significant relationship to the insurance transaction and the parties to the Policy, so the first exception does not apply.

As to the public policy exception, our Supreme Court has cautioned that it has a narrow application:

> We adhere to the general principle that a court should not refuse to apply foreign law, in otherwise proper circumstances, on public policy grounds unless the foreign law "is contrary to pure morals or abstract justice, or unless

---

[4] Section 6 of the Restatement (Second) of Conflict of Laws sets forth the following full list of factors for consideration:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
    a. the needs of the interstate and international systems,
    b. the relevant policies of the forum,
    c. the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
    d. the protection of justified expectations,
    e. the basic policies underlying the particular field of law,
    f. certainty, predictability and uniformity of result, and
    g. ease in determination and application of the law to be applied.

enforcement would be of evil example and harmful to its own people." 16 Am.Jur.2d Conflict of Laws § 18. (Footnote omitted).

*Nadler v. Liberty Mut. Fire Ins. Co.*, 188 W. Va. 329, 338, 424 S.E.2d 256, 265 (1992). Petitioners allege that Motorists Mutual breached its duty of good faith and fair dealing by including the "Damage to Your Work" and "Damage to Property" exclusions, with the subcontractor exception, in the Policy while simultaneously denying coverage under Kentucky law. Therefore, Petitioners allege that applying Kentucky law would be "contrary to pure morals" and "abstract justice" as prohibited by *Nadler*, and therefore, against the public policy of West Virginia. We disagree and find this argument unsupported by persuasive authority or the record below.

Petitioners submit that the application of Kentucky law violates public policy because it would "eliminate coverage" but that alone is not enough to invoke the exception. "The mere fact that the substantive law of another jurisdiction . . . is less favorable than the law of the forum state does not, by itself, demonstrate that application of the foreign law . . . is contrary to the public policy of the forum state." *Id*. at 331, 424 S.E.2d at 258, syl. pt. 3. Petitioners submitted no other evidence to demonstrate that they were misled by Motorists Mutual regarding coverage, the applicable law, or had any reasonable expectation that Kentucky law would not apply, and, therefore, we cannot conclude that applying Kentucky law violates West Virginia public policy. Finding that neither exception applies, we find that Kentucky law applies to the interpretation of the Policy.

Next, we turn to Petitioners' first assignment of error, in which they contend that Motorists Mutual has a duty to defend and indemnify Bohnert under the Policy's "Damage to Your Work" exclusion and the subcontractor exception, whether West Virginia or Kentucky law is applied.[5] As we have already determined that Kentucky law applies, we need not address this argument as it relates to West Virginia law. The gist of the remaining portion of the argument regarding finding coverage under Kentucky law is that the circuit court erred in determining that "[b]reach of contract claims and breach of warranty claims flowing from faulty workmanship are not occurrences under Kentucky law" and therefore do not come within the Policy's coverage grant. Petitioners urge this Court to recognize that the alleged damages are the result of an "accident" due to their fortuitous nature, and constitute an "occurrence" under the Policy, and also seek available exceptions, including, "a general rule [that] exists whereby a CGL policy would apply if the faulty workmanship

---

[5] Although styled as an "assignment of error," this section of Petitioners' brief is phrased in the form of a question, ("Whether Motorists Mutual has a duty to defend Bohnert in the underlying case, regardless of whether West Virginia or Kentucky law applies?") and does not reference any specific error alleged in the ruling from the court below. Therefore, we have extrapolated this assignment of error from the relevant argument section of the brief.

caused bodily injury or property damage to something other than the insured's allegedly faulty work product." *Cincinnati Ins. Co. v. Motorists Mut. Ins. Co*., 306 S.W.3d 69, 80 n.45 (Ky. 2010). Petitioners argue that because the alleged faulty workmanship has purportedly damaged Barrel's property, something other than Bohnert's work product, the exception to the exclusionary language applies and coverage should be triggered. We disagree.

The Policy defines "occurrence" as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." The term "accident" is not defined in the Policy, but the Supreme Court of Kentucky has accorded the term its plain meaning. *Cincinnati*, 306 S.W.3d at 74. The Kentucky court expanded on its reasoning in *Cincinnati* and developed a two-part fortuity analysis to determine whether an event constitutes an "occurrence" under a CGL policy: "1) whether the insured intended the event to occur; and 2) whether the event was a 'chance event' beyond the control of the insured." *Martin/Elias Properties, LLC v. Acuity,* 544 S.W.3d 639, 643 (Ky. 2018) (quoting *Cincinnati*, 306 S.W.3d at 76). In both *Cincinnati* and *Acuity*, the Kentucky court distinguished damage to construction work as the result of an accident from a fortuitous event from damage caused by an unintended consequence of poor workmanship.

> Damage that results from poor workmanship would be considered an accident in laymen's terms. One would not purposefully perform substandard work for the purpose of damaging property. So the emphasis should not be whether the damage done is the type of damage that would be expected by the contractor, but rather whether the damage resulted from the actions purposefully taken by the contractor or those working under the contractor's control.

*Acuity*, 544 S.W.3d at 644. The court remarked that a contrary analysis that disregarded the intent of the insured and a finding of liability under the CGL policy "would be tantamount to converting the builder's CGL policy into a performance bond or unconditional guarantee." *Id* at 642. As the court observed, "[t]he purpose of a CGL policy is to protect an insured from bearing financial responsibility for unexpected and accidental damage to people or property. It is not intended to substitute for a contractor's performance bond[.]" *Cincinnati*, 306 S.W.3d at 75 n.19 (citation omitted).

Applying the fortuity analysis to the causes of action in Barrel's complaint against the petitioners, we find no allegations that satisfy the definition of an "occurrence" in the Policy. Count I alleges that Bohnert and its subcontractors failed to perform work "in a good and workmanlike manner[.]" Because Bohnert had control over its work and the work of its subcontractors, this allegation does not indicate sufficient "fortuity." Counts II, III, IV, V, and VI state claims for breach of contract and breach of warranties flowing from Bohnert's alleged faulty workmanship. These claims do not constitute "occurrences" under Kentucky law because a breach of contract is not an accidental or fortuitous act. *See, e.g.,*

*Kentucky Farm Bureau Mut. Ins. Co. v. Blevins,* 268 S.W.3d 368, 375 (Ky. Ct. App. 2008). Counts VI, VII, VII, IX, and X allege fraudulent conduct by petitioners. Fraud is an intentional or willful act. *United Parcel Serv. Co. v. Rickert*, 996 S.W.2d 464, 469 (Ky. 1999) (citing *Chamberlain v. Nat'l Life & Accident Ins. Co.*, 76 S.W.2d 628, 631 (Ky. 1934)). Accordingly, fraud can never be considered an "occurrence" under the Policy. Finally, Count XI makes allegations regarding the shoddy workmanship by a subcontractor "at the behest of Bohnert." As discussed infra, because Bohnert exercised control over the workmanship of the project, either directly or indirectly through the subcontractors it selected, any resulting claims were not the result of "chance events" as contemplated by the fortuity analysis. Accordingly, we find that there is nothing in the Barrel complaint that constitutes an "occurrence" to trigger coverage under the Policy pursuant to the application of Kentucky law.

Moreover, we decline to apply the exception or exclusions urged by petitioners, who have suggested that the application of the subcontractor exception to the "Your Work" exclusion would trigger coverage under the Policy. However, the Kentucky Supreme Court has been clear that "a court need not consider the applicability of an exclusion if there is no initial grant of coverage under the policy." *Cincinnati*, 306 S.W.3d at 78, n.35. The court acknowledges that the inquiry stops if there is no coverage due to the lack of an "occurrence" and there is no need to address any arguments concerning exclusions or the exceptions to exclusions. Accordingly, we likewise find that the exception to the exclusion cited by petitioners is not applicable here, where there is no initial grant of coverage.

Finally, we turn to the third assignment of error, that the court erred by ruling prematurely that Motorists Mutual had no duty to indemnify petitioners. The substance of this allegation is that because the underlying suit between Barrel and Bohnert is still pending, the court could not determine Motorists Mutual's indemnity obligation. Again, we disagree. Under Kentucky law, the insurer's duty to defend is broader than the duty to indemnify. *James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co.,* 814 S.W.2d 273, 280 (Ky. 1991). "The insurer has a duty to defend only if there is an allegation which potentially, possibly, or might come within the coverage of the policy. [citation omitted] Since no such possibility exists, even if [the] allegations are accepted as true, there is no duty of [the insurer] to defend or indemnify [the insured]." *Thompson v. West Am. Ins. Co.*, 839 S.W.2d 579, 581 (Ky. Ct. App. 1992). Here, as we have determined that there is no coverage under the Policy for these allegations, there is no duty to defend and no duty to indemnify.

Accordingly, we affirm the April 19, 2023, order of the Circuit Court of Greenbrier County.

Affirmed.

9

**ISSUED:**  September 4, 2024

**CONCURRED IN BY:**

Judge Charles O. Lorensen
Judge Daniel W. Greear


Chief Judge Thomas E. Scarr, not participating