CASE 28—IN EQUITY—FEBRUARY 12.

# Harrow vs. Johnson, &c.

### APPEAL FROM MONTGOMERY CIRCUIT COURT.

Dismissal of a cross-bill as to one of the causes of action therein, with an express reservation as to all "other matters," is no bar as to such matters.

Though the wife joins with the husband in a mortgage of his land, and though the husband should afterwards release, convey, or devise the equity of redemption, the wife will be entitled, at his death, to her dower in the land, subject to the mortgage, and if the land is sold under the mortgage, then to her claim as for dower in the surplus proceeds, if any there should be.

Where the wife joins with the husband in a mortgage of his land and personal property, she has, after the death of her husband, an equitable right to have the mortgaged personalty first applied to the mortgage debt, as against the mortgagee and general creditors.

Where executors have the power to sell, and the title to the lands of the testator, they can make an agreement to assign a part thereof to the widow, for dower, in consideration of her releasing the residue, which, in the absence of collusion between them and the widow, will bind the heirs as well as creditors. That the widow got a good bargain, would not enable the creditors to set aside the agreement, even though the circumstances might be such as to render the executors personally liable to the creditors.

Where land and personalty of the husband were mortgaged by him and his wife, she has, after his death, (if the mortgaged property be worth more than the mortgage debt and interest,) such an interest in the land, as that her release of it, at the instance of his executors, having a power of sale and the title to the lands of the testator, is a valuable consideration for an agreement by them to give her a life estate in the unincumbered land. [Here the mortgaged land was ninety-eight acres, and the remainder, fifty-five acres, conferred upon the widow for life.]

Although the agreement, *supra*, was not in writing, the general creditors of the husband, for whose benefit the release from the widow was procured, are not entitled to the aid of a court of equity for the purpose of taking the land from her under the devise to the executors, in violation of said agreement.

The statute of frauds does not declare parol contracts for the sale of land *void*. It merely declares that no action shall be brought upon such contracts. They are, however, valid for many purposes. The law will not permit a plaintiff to take advantage of the statute of frauds for the purpose of committing a fraud on the defendant. (3 *Mon.*, 170; 2 *J. J. Mar.*, 22; 4 *Ib.*, 570.)

K. FARROW, for appellant.

T. F. HAZELRIGG, for appellee.

JUDGE BULLITT DELIVERED THE OPINION OF THE COURT: (Judge Peters did not sit in this case.)

In 1840 Joseph Harrow, the husband of the appellant, having possession of one hundred and ninety-eight acres of land,

to which he claimed title, mortgaged ninety-eight acres thereof, and certain personal property, to Josiah Davis, to secure the payment of about $4,000. Mrs. Harrow joined in the mortgage.

Said Joseph Harrow died in June, 1841, and by his will devised all his property to his executors, said Davis and T. F. Harrow, for the payment of his debts, the surplus, if any, to descend as provided by law. Mrs. Harrow renounced the will.

One Wm. Farrow claimed one hundred acres of said land, (being the part not embraced in the aforesaid mortgage,) and brought an action of ejectment therefor, and about the year 1850 recovered forty-five acres thereof, leaving fifty-five acres thereof in the possession of Mrs. Harrow.

In July, 1841, Mrs. Harrow united with said executors in conveying to one Howell, for $3,920, the ninety-eight acres mortgaged to Davis.

The slaves and personal property of the testator were sold by the executors for about $7,000. How much, if any, of this was realized from the personalty mortgaged to Davis does not appear.

In August, 1841, the executors filed a bill against the testator's heirs and creditors, to wind up the estate, alleging that the assets were insufficient to pay the debts.

In that suit Mrs. Harrow filed an answer and cross-bill, alleging that the executors had fraudulently induced her to excute the deed to Howell for the ninety-eight acres; that T. F. Harrow, who brought the deed to her, assured and promised her that if she would sign it, she should have for life the aforesaid fifty-five acres, on which she then resided, and that said executors knew that they could not secure to her said fifty-five acres for life; and that without her knowledge or consent, they had caused the county court to allot to her twelve acres of said fifty-five acre tract as her dower, but that she refused to accept said allotment; and she prayed that her release to Howell might be set aside, and that dower should be assigned to her out of all the land, and for all proper relief.

In June, 1843, the court below ordered, in effect, that the aforesaid mortgage debts should be first paid out of the pro-

ceeds of the ninety-eight acres and the slaves and personalty, that the commissioner should report the *pro rata* share of the other creditors in said fund, and that no deduction should be made on account of Mrs. Harrow's dower; and in December, 1843, said court ordered that said fund should be distributed between said creditors, each to receive 57 *per cent.* of his claim, and dismissed Mrs. Harrow's cross-bill as to the land sold to Howell, and "as to other matters on Mrs. Harrow's cross-bill," the same was continued; and ordered the papers in the case to be filed away, subject to the further order of the court. No other steps appear to have been taken in said suit except the re-docketing of it in 1857.

In 1854, both of said executors having died, the appellee, Thomas Johnson, filed a petition against Mrs. Harrow and others, with a copy of the aforesaid decree made in December, 1843, alleging that he and others, made defendants to his petition, were creditors of Joseph Harrow, deceased, as shown by said decee; that the litigation concerning said fifty-five acres had terminated in the defeat of Wm. Farrow's claim, and that twelve acres thereof had been assigned to Mrs. Harrow for dower; and praying that the fifty-five acres might be sold to pay their demands, subject to said dower right.

Mrs. Harrow filed an answer and cross-petition, stating substantially the same facts as those stated in her answer to the bill of Joseph Harrow's executors, and referred to and adopted said answer, and claimed a right to said fifty-five acres during her life. The record of the suit of Harrow's executors against Harrow's creditors, &c., was made an exhibit in this case by Reid, the executor of Josiah Davis.

The court below ordered a sale of said fifty-five acres, or so much as might be necessary to pay the sum of $3,920, subject to Mrs. Harrow's right to twelve acres thereof for life, from which judgment she took this appeal.

The judgment appealed from was rendered in the suit brought by Johnson, and not in that brought by Harrow's executors. No judgment could have been properly rendered in the latter case, because: 1st. It had not been submitted; and 2d. It had not been revived.

The court could not have properly rendered a judgment for more than the sums due to Johnson and those creditors who were made defendants to his petition. Their demands did not amount to $1,000. The court therefore erred in ordering a sale of the land to pay $3,920.

The opinion of the circuit judge, that Mrs. Harrow's claim to the fifty-five acres for life was barred by the decree rendered in 1843, in the case of Harrow's executors against Harrow's creditors, &c., was erroneous, because, as we have shown, the court merely dismissed her cross-bill as to the land sold to Howell, with an express reservation as to all other matters.

The circuit judge also erred in supposing, that when a wife has joined her husband in a mortgage of his land, he, by conveying or devising the equity of redemption, can defeat her right to dower, though the property mortgaged may be worth more than the amount of the mortgage debt. "Though the wife joins with the husband in the mortgage, and though the husband should afterwards release the equity, the wife will be entitled, at his death, to her dower in the lands, subject to the mortgage ; and if they are sold under the mortgage, then to her claim as for dower in the surplus proceeds, if any there should be." (4 *Kent*, 44.)

As between Mrs. Harrow and her husband, she had a right, in equity, to have the proceeds of the personalty embraced in the mortgage first applied to the mortgage debt, so as to relieve the land in which she had an interest. If the mortgagee had sued Harrow and wife for a foreclosure, the court would have directed a sale of the personalty and of so much of the land as would pay the residue of the mortgage debt.

Mrs. Harrow was under no obligation to the general creditors of her husband. As against them she had the same equitable right to have the mortgaged personalty first applied to the mortgage debt as she had against her husband.

If, therefore, at the time of the deed to Howell, the mortgaged land and personalty were worth more than the mortgaged debt and interest, Mrs. Harrow had an interest in the land, her release of which to Howell, at the instance of the executors, formed a valuable consideration for the alleged

agreement of the executors to give her the fifty-five acres for life.

And as the executors had not merely a power of sale, but the title to the lands of the testator, our opinion is, that they could have made an agreement to assign a part thereof to the widow for dower in consideration of her releasing the residue, which, in the absence of collusion between them and the widow, would have bound the heirs as well as creditors.

In such a case, the fact that the widow got a good bargain would not enable the creditors to set aside the agreement, even though the circumstances might be such as to render the executors personally liable to the creditors.

In the case before us the plaintiff's pleadings show, that when Mrs. Harrow released to Howell, the title to the fifty-five acres was in dispute and doubtful. Mrs. Harrow, therefore, in releasing to Howell, ran a risk of getting no dower at all. The fact, therefore, even if it distinctly appeared that her use of the fifty-five acres for life was worth more than her dower in all the land, after satisfying the mortgage debt, would not show that the agreement of the executors as to the fifty-five acres, if made as alleged, was unfair or unjust to the creditors.

But it is contended that no such agreement was made. The allegation contained in her cross-bill against Joseph Harrow's executors, that T. F. Harrow, the executor, when he brought the deed to Howell to get her signature, told her that if she would execute it she should have the fifty-five acres for life, was not denied in his answer. Davis, the other executor, says: "He does not believe that fraud was intended by that release, for at that time it was believed by this respondent that property enough could be sold to pay the debts and leave the home place and part of the slaves; but he never did promise complainant that she should have the home tract, or any portion of the slaves, although he may have said that it would not be necessary to pay the debts." Why did he make that statement to her? She was entitled to one-third of the fifty-five acres for life, whether the debts were paid or not. We cannot conceive a motive for that representation unless it was to

induce her to believe that she would have the fifty-five acres for life, if she would release to Howell. We are satisfied that the executors induced her to sign the deed to Howell by promising and leading her to believe that she would have the fifty-five acres for life, if William Farrow's claim should be defeated.

But it is contended that the agreement was void, under the statute of frauds, because it was not written. The statute, however, does not declare parol contracts for the sale of land *void*. It merely declares that no action shall be brought upon such contracts. If the executors had been in possession of the fifty-five acres, Mrs. Harrow could not have recovered it upon said contract. But such contracts are valid for many purposes. The law will not permit a plaintiff to take advantage of the statute of frauds, for the purpose of committing a fraud on the defendant. (3 *Mon.*, 170; 2 *J. J. Mar.*, 22; 4 *Ib.*, .)

The creditors, who are seeking to subject the land by virtue of the devise to the executors, who are in fact claiming under the executors, and for whose benefit the executors procured the release to Howell, are not entitled to the aid of a court of equity for the purpose of taking the land from Mrs. Harrow in violation of the agreement by which she was induced to execute said release.

If, however, the mortgaged property (land and personalty,) was not worth more than the amount of the mortgage debt and interest, there was no consideration for the agreement of the executors as to the fifty-five acres, and Mrs. Harrow is not entitled to more than the twelve acres allotted to her. The record shows that the ninety-eight acres did not bring the amount of the mortgage debt, but does not show the value of the mortgaged personalty which came to the hands of the executors. Upon this point Mrs. Harrow, after the return of the cause, should have reasonable time to amend her answer and if necessary to produce proof.

The judgment is *reversed*, and the cause remanded for further proceedings not inconsistent with this opinion.