James W. JOHNSON, Appellant,

v.

K. A. CORMNEY and Ethel Cormney, Appellees.

Court of Appeals of Kentucky.

Nov. 30, 1979.

Discretionary Review Denied April 15, 1980.

James D. Ishmael, Jr., Brown, Sledd & McCann, Lexington, for appellant.

Wheeler B. Boone, Lexington, for appellees.

Before HOGGE, REYNOLDS and WINTERSHEIMER, JJ.

REYNOLDS, Judge.

This is an appeal by James W. Johnson, one of the judgment defendants against whom a verdict had been rendered by a Fayette Circuit Court jury in an action for fraud and deceit initiated by the sellers of a mechanical vending machine business to the appellant and two associates.

The appellees, Mr. and Mrs. K. A. Cormney, were the owners of a vending machine business (Central Vending Company) which

had been in operation for more than fifteen years in the Lexington, Kentucky, area. Their company employed 50–60 people, owned and operated 25–30 motor vehicles and operated between 700–1,000 vending machines ranging in value from $100 to $5,000 each which were located in some 300–400 locations. The company, a functioning enterprise, had at the time the business was sold assets and accumulated depreciation approximating $1,000,000 with annual gross sales and revenue of $1,500,000. At the time of sale the company's indebtedness exceeded $404,000; and it showed a loss of $74,000 for 1971. Mr. Cormney, who desired to sell the business, was contacted by Messrs. Henry, Johnson and Kennedy who were stockholders and officers in a North Carolina company. After preliminary studies and examination of the company records and assets, the parties executed a stock sale and purchase agreement on June 27, 1972, and in conjunction therewith the buyers' North Carolina company assumed indebtednesses owed by Mr. Cormney's company to the Central Bank and Trust Company, with Cormney remaining personally liable to the bank. While Mr. Henry entered into the sales-purchase contract as an officer of the North Carolina company, all contractual rights were thereafter assigned to Mr. Henry, individually, and he became the principal operating officer of the newly-acquired Kentucky corporation.

Under Henry's stewardship, during the summer and fall of 1972, the vending company experienced financial difficulties, and by October of 1972 the business was getting pressure from banks to reduce its indebtedness. On December 23, 1972, at the demand of Central Bank and Trust Company, alternate financing was required, and a new contract was entered into. Therein appellant Johnson and Mr. Kennedy agreed to personally sign an extension agreement as additional security to Central Bank and Trust Company. This agreement contained provisions to the effect that the physical assets of Central Vending would be first applied in the event of default upon the repayment of its loan, that Mr. Cormney would be fully informed so he could protect certain stock that he had pledged as additional security for the loan, and that all proceeds of the sale of used equipment would be applied toward the payment of the debt at Central Bank. On December 28, 1972, appellant Johnson was elected executive vice-president of the company at a directors' meeting and was charged with the financial aspects of the business. On January 2, 1973, a $251,182.90 promissory note to the order of Central Bank and Trust Company was signed by appellant Johnson, Kennedy and Mr. Cormney. Through the spring of 1973 unsuccessful negotiations were conducted with a national vending concern relative to the sale of Central Vending Company.

By early May 1973 the company was a financial wreck. It collapsed and was placed into receivership with only $40,000 to $50,000 worth of equipment on hand and on location, with $450,000 to $500,000 worth of bills and claims from various suppliers and with an indebtedness owing to Central Bank. This litigation was instituted by the appellees as against three original co-defendants, Henry, Kennedy and Johnson, alleging that through their overt and omitted acts they wrongfully, willfully, and maliciously conspired and connived to remove the tangible property, monies and assets of Central Vending Company and to defraud the creditors thereof. Co-defendant Henry was not present at trial and has not appealed. A directed verdict was entered for the co-defendant, Kennedy. The record is replete with substantial evidence that the Central Vending Company's assets were disposed of or sold with an intent to avoid the payment of equipment mortgages, or to cheat, hinder or delay the company's creditors which included appellees.

The appellant Johnson appeals from the $251,182.90 judgment entered against him and co-defendant, Mr. Henry. On this appeal he raises the following issues:

I. Whether the court correctly gave instructions permitting judgment against the appellant on basis that he "condoned" some alleged action, when the allegations of the complaint and amended complaint

charged and the opening statement of counsel indicated that proof would show that the appellant "wrongfully, willfully, maliciously, unlawfully, . . . and with a fraudulent intent" committed certain acts against the appellees in an effort to cheat them?

II. Whether there was sufficient proof of any direct involvement by the appellant to support the verdict and judgment on grounds of fraud and deceit?

III. Whether there was sufficient proof on the issue of damages to support the verdict and judgment, or whether the jury was allowed to speculate or guess?

IV. Whether the appellees failed to take appropriate action to prevent their alleged damages in breach of their contractual and legal duties which, under proper instructions, the jury should have had an opportunity to decide?

V. Whether there existed sufficient contacts with Kentucky by the appellant to confer jurisdiction by this court pursuant to KRS 454.210?

 On the first issue he maintains that the trial court's Instruction No. 2, Question No. 3 was improper in that it did not correctly set forth the requirements of the law or proof by which his conduct should have been measured. This instruction provided:

Question No. 3: Do you believe from the evidence that subsequent to June 27, 1972, the defendant, James W. Johnson, caused or knowingly participated in or *knowingly condoned* the taking, selling, or disposing of money or property belonging to Central Vending Company *with the intent to avoid the payment of mortgages on such property, or to cheat, hinder or delay the creditors of Central Vending Company, including the plaintiff?* (Emphasis added.)

It is appellant's contention that the trial court's use of the word, "condoned," in this instruction erroneously allowed the jury to reach a verdict without its finding that he had wrongfully, willfully, unlawfully and intentionally committed affirmative acts to the detriment of the appellees, contrary to the pleadings and offered proof.

Appellant's tendered instruction as to this issue required the jury to believe from the evidence that he

wrongfully, willfully, maliciously, unlawfully did sell or otherwise dispose of the money and physical assets of Central Vending Company . . . with the fraudulent intent to cheat, hinder . .

Appellees' complaint, as amended, had alleged omitted as well as overt fraudulent acts by Johnson against the appellees, and in any event proof was introduced at trial as to Johnson's omitted acts during his tenure as executive vice-president of the company without objection. But for the use of the word, "condoned," those instructions tendered by appellant do not differ substantially from those given by the court, and we find no objection by appellant at trial, or tendered instruction, that could be said to make reasonably clear to the trial court what the appellant had in mind as to his objection to the use of the word, "condoned." *See* CR 51 and Palmore, *Kentucky Instructions to Juries,* Vol. 2 § 13.11 and § 13.15.

While appellant did not preserve any assignment of error as to this instruction, we determine that the instruction, as given, was not likely to mislead the jurors in that it was clear that appellant's condoning of the acts of another had to be done both with his knowledge of those acts and with his intent to avoid the payment of mortgages or to cheat, hinder or delay creditors, including the appellees. Contrary to appellant's assertions, fraud and deceit are not limited to active or affirmative acts when the circumstances surrounding a transaction impose a duty or an obligation upon one of the parties to disclose material facts known to him and not known to the other party. *Hall v. Carter,* Ky., 324 S.W.2d 410 (1959).

 The second issue is that while Mr. Henry was shown to be the perpetrator of certain acts that could have substantially impaired appellees' rights, appellant's direct involvement in fraud or deceit was never

shown. We note that it is not necessary that direct evidence of fraud be adduced and that fraud may be established by evidence which is wholly circumstantial. 37 C.J.S. *Fraud* § 115; and *Campbell v. First National Bank of Barbourville*, 234 Ky. 697, 27 S.W.2d 975 (1930). The courts of this Commonwealth have long recognized that "[p]arties contemplating the commission of fraud do not usually blow a horn or beat a drum to call attention to what they are doing," and have accordingly held that frauds may be established by circumstances. *Bolling v. Ford*, 213 Ky. 403, 281 S.W. 178 (1926). Further, even though each bit of circumstantial evidence in and of itself may seem trivial and unconvincing, the combination of all the circumstances considered together may be decisive in a given case of fraudulent design. 37 C.J.S. *Fraud* § 115. We have studied the entire transcript and determine that sufficient evidence of appellant's participation was produced to support the jury's verdict. Simply, there was evidence of appellant's being advised that machines and money were being taken and that payments were not being made upon the company's indebtedness, in accordance with agreements between the parties, and the jury did not believe appellant's testimony to the effect that he did not know what was going on around him. There were issues of material facts presented in this case requiring submission to a jury, and under such a circumstance, where certain testimony must be believed and other testimony must consequently be rejected, we are most hesitant, even if we were so inclined, to substitute our surmise for the findings of a jury. *Lemaster v. Caudill*, Ky., 328 S.W.2d 276 (1959).

Appellant's third argument is that there was insufficient proof on the issue of damages to support the jury's verdict. His reference to *Spencer v. Woods*, Ky., 282 S.W.2d 851 (1955); *Sanford Construction Co. v. S & H Contractors, Inc.*, Ky., 443 S.W.2d 227 (1969); *Roadway Express, Inc. v. Don Stohlman & Assoc., Inc.*, Ky., 436 S.W.2d 63 (1969); and *Commonwealth, Department of Highways v. Jent*, Ky., 525 S.W.2d 121 (1975), are unconvincing. As a general rule, the measure of damages for fraud is the actual pecuniary loss sustained, and one injured by the commission of fraud is entitled to recover such damages in a tort action as would place him in the same position as he would have occupied had he not been defrauded. 37 Am.Jur.2d *Fraud and Deceit* § 342; and *Sanford Construction Co., supra*. All recoverable damages are subject to some uncertainties and contingencies, but it is generally held that the uncertainty which prevents a recovery is uncertainty as to the fact of damage and not as to its amount. Where it is reasonably certain that damage has resulted, mere uncertainty as to the amount does not preclude one's right of recovery or prevent a jury decision awarding damages. 22 Am. Jur.2d *Damages* § 23 and § 25; *Kellerman v. Dedman*, Ky., 411 S.W.2d 315 (1967); and *Roadway Express, supra*.

Appellant argues that there was no evidence of numbers of equipment or amounts allegedly taken by him that was ever presented to the jury and that in substance the evidence was confusing and based upon guesswork and speculation. We determine that in this case the trial court correctly permitted the introduction of testimony having a broad, but not unreasonable, evaluation as to the numerous pieces of equipment and vehicles that had been disposed of from the business from the date of the sale in June 1972 to the date of the collapse of the business in May 1973. The court permitted the testimony of experienced parties, giving a range in values as to the worth of various machines or equipment. The jury's verdict was for the amount of appellees' collateral note to Central Bank but this, of itself, does not reduce the case to one of a promissory note as to an action sounding in fraud and deceit since the verdict was within the limits of the proof.

Appellant's fourth contention is that the trial court improperly refused his tendered instruction to the effect that Mr. Cormney had a duty to exercise reasonable business judgment commensurate with his

skill and experience in overseeing and directing the business affairs and operation of Central Vending Company to prevent failing circumstances. We disagree and find appellant's citations distinguishable. A high degree of frankness and fair dealing was required in this buy-sale arrangement, and the appellee could not be charged with a lack of diligence in failing to make an independent investigation under the facts of this case. 37 Am.Jur.2d *Fraud and Deceit* § 254. Additionally, there was no evidence to support such an instruction since Mr. Cormney had relinquished control of the company, and his son had been fired the day after the sale. On occasion, prior to the collapse of the business, Mr. Cormney and his son did make business inquiries, and the son, according to his own testimony, was thrown out of the building. Mr. Cormney, however, was reassured that the money was being properly applied and was told not to worry.

█ As to appellant's fifth issue, we find sufficient contacts with Kentucky by the appellant existed to confer jurisdiction, pursuant to KRS 454.210(2)(a).

It should be noted that early in this appeal the appellees moved to dismiss this appeal for failure to properly designate the judgment appealed from in the notice of appeal. CR 73.03. The notice stated that the appeal was taken "from the final judgment entered by this court on the 4th day of May, 1978." May 4 was the date of entry of an order overruling a motion for a new trial. The final judgment had actually been entered on March 13, 1978.

Sitting en banc, this Court overruled the motion to dismiss stating that the appellant had complied with CR 73.03 by using the words "final judgment" and that the date of the judgment was not an essential element of the designation in cases where all issues were settled by a single judgment. Judges Hayes, Lester, and White dissented from that holding.

The opinion and order on the motion to dismiss also contained a ruling dismissing the appeal in *Adams v. Commonwealth.* The opinion and order was originally designated to be published, but because discretionary review was granted in *Adams v. Commonwealth,*[1] it appears that our opinion and order should not be published and cannot be cited as authority. CR 76.28(4)(c). Discretionary review was sought in this appeal but was denied because the case was still pending in this Court. Our holding is restated here for the information of the bar and to make it clear that our opinion and order of December 22, 1978, in this appeal can no longer be cited as authority.

The judgment is affirmed.

All concur.

---

1. See *Foremost Insurance Co. v. Shepard,* Ky., 588 S.W.2d 468, (1979).