**Michael NARGI, Plaintiff,**

v.

**CAMAC CORPORATION, Defendant.**

No. 92–0110–A.

United States District Court,
W.D. Virginia,
Abingdon Division.

Dec. 22, 1992.

him for a position as vice president, technical director with CaMac, and that the agent represented to him that his employment with CaMac would last at least four years. Nargi has brought suit against CaMac for fraud and for breach of contract under Virginia law. Diversity jurisdiction lies with this Court pursuant to 28 U.S.C.A. § 1332; Nargi is a resident of Tennessee, and CaMac Corporation is a Virginia corporation.

CaMac now moves to dismiss Nargi's suit for failure to state claims upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). CaMac also moves for summary judgment on both claims, arguing that as a matter of Virginia law, judgment should be granted for the defendant, under Federal Rule of Civil Procedure 56(b).

## FACTS

In the spring of 1990, Nargi resided with his family in Waynesboro, Virginia. He was self-employed as an industrial consultant. In May, 1990, Nargi performed consulting work for CaMac. According to Nargi's affidavit, after several weeks, Mike Hale, Vice President and General Manager of CaMac (Hale), offered Nargi a position with the company, and requested Nargi's terms of employment. (Pl.'s Aff. at 1.)

Nargi states that he told Hale that he would work for CaMac on the condition that he would be paid $160,000 a year, that he would receive a paid country club membership and a company car, and that CaMac would buy Nargi's house in Waynesboro. Most importantly, Nargi alleges that he told Hale he would need a guaranteed term of employment of at least four years. According to Nargi, Hale advised him that CaMac found the terms acceptable. Nargi quotes Hale as stating that "Dawburn [CaMac's president] said you could have what you want." (Pl.'s Aff. at 1).

On July 13, 1990, Hale sent Nargi a letter stating certain employment terms. Specifically, the letter acknowledges Hale's and Nargi's "most recent conversations" and "proposes to offer" Nargi a position as "Vice President, Technical Director." The letter

Edward G. Stout, Jr., Bristol, VA, for plaintiff.

James P. Jones, Bristol, VA, for defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, Senior District Judge.

Michael Nargi (Nargi) alleges that an agent of CaMac Corporation (CaMac) sought

states that CaMac would pay Nargi "$80,000 annually" as a base salary, and "$80,000 profit sharing annually in equal bi-monthly payments." The letter goes on to offer payment of moving expenses and temporary living expenses at a particular hotel, including meals; "access" to a company car; and a membership at a local country club. No mention was made in the letter of Nargi's request that CaMac purchase his house in Waynesboro, or that CaMac would guarantee employment for Nargi for a term of at least four years. (Pl.'s Aff. at 2.)

Nargi, concerned that the purchase of his home and the promise of a term of employment were not in the letter, asked Hale about the omissions. Nargi says that Hale expressed reservations about CaMac's purchase of the Nargi home. Nargi offered to commute from Waynesboro to Bristol, but according to Nargi, Hale replied, "No! We want you for a long term." Hale then arranged for CaMac to purchase Nargi's house, at an alleged loss to Nargi. (Pl.'s Aff. at 2.)

Nargi also claims that Hale referred to the term of employment in a later discussion about Nargi's lack of experience in the fiber business. Nargi says that Hale stated, "Don't worry. In two or three years, you will know the business." (Pl.'s Aff. at 2.)

Nargi claims that as a result of Hale's assurances on behalf of CaMac, he permitted CaMac to purchase his home, closed his consulting business, and ended negotiations for the purchase of a different business. Nargi moved his family from Waynesboro to Bristol Virginia. In November, 1991, CaMac terminated Nargi for reasons not apparent from the record. (Pl.'s Aff. 2; Pl.'s Compl. at 2.)

Dawburn, President of CaMac, claims by way of affidavit that he never offered Nargi employment for a set term. (Def.'s Dawburn Aff.) Hale, also by affidavit, states that he never promised Nargi employment for a definite term, and does not acknowledge any discussion with Nargi on that issue. Hale

claims that the terms of the contract were set forth by his letter of July 13, 1990. (Def.'s Hale Aff.)

Nargi has brought two claims against CaMac, one for breach of contract, and one for fraud. CaMac now moves to dismiss these claims for failure to state claims upon which relief can be granted, and also for summary judgment, arguing that as a matter of law, judgment should be issued for CaMac.[1]

## ANALYSIS

### I. *Breach of Contract*

The party seeking summary judgment bears the initial burden to set forth to the court the basis of its motion, supported by " 'pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Rule 56(c)). The moving party must then demonstrate that he or she is entitled to judgment as a matter of law. Fed.R.Civ.Pro. 56(c).

Once the moving party has satisfied its burden, the burden then shifts to the non-moving party "to go beyond the pleadings," *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553, and by his or her own affidavits and other documents set forth " 'specific facts showing that there is a genuine issue for trial.' " *Id.* Summary judgment is inappropriate where the issues turn on the credibility or intent of the parties, and the facts must be construed in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986).

CaMac argues that it should be granted summary judgment because Nargi's breach of contract claim is based on an oral agreement for a four-year term of employment, barred by the statute of frauds as an

1. Federal Rule of Civil Procedure 12(b)(6) permits parties to file motions to dismiss opposing parties' complaints to the extent that they fail to state claims upon which relief can be granted. However, if upon such a motion, "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed.R.Civ.Pro. 12. Here, the nonmoving party, Nargi, has presented an affidavit that goes into facts beyond his complaint; as a result, this Court will examine Camac's motion as one for summary judgment rather than as a motion to dismiss.

oral contract not to be performed within one year. *See* VA.CODE ANN. § 11–2(8) (1992).[2] Nargi argues in return that CaMac should be estopped from asserting the statute of frauds on the basis of the representations Hale made to Nargi concerning employment for a long term.

█ CaMac asserts that any oral promises alleged by Nargi are barred by the statute of frauds. Nargi in turn argues that CaMac should be estopped from asserting the statute of frauds due to Hale's representations, e.g., "we want you for a long term," on which Nargi relied to his detriment.

█ Equitable estoppel will thwart the pleading of the statute of frauds in Virginia. The elements of equitable estoppel were set forth by the Supreme Court of Virginia in *T ... v. T ...*, 216 Va. 867, 224 S.E.2d 148 (Va.1976): "a representation, reliance, a change of position, and detriment." *Id.* at 873, 224 S.E.2d at 152. (quoting *United States v. Fidelity & Casualty Co.*, 402 F.2d 893, 989 (4th Cir.1968)).

At common law, a party could raise equitable estoppel against an assertion of the statute of frauds. The early doctrine of equitable estoppel required reliance on misrepresentations of past or current fact made by the party seeking the protection of the statute of frauds. In other words, to avoid the statute of frauds, a party would have to demonstrate fraud or deceit; if the breaching party had not made representations about the past or present, but merely promised to act in the future without intent of fulfilling

the promise, equitable estoppel was unavailable to the suing party. WILLISTON ON CONTRACTS, § 533A at 806 (3d ed.1960).

█ More recently, however, courts have begun to relax the strict requirement of fraud or deceit for invocation of equitable estoppel, *see, e.g.,* RESTATEMENT (SECOND) OF TORTS § 139 (1979), and Virginia has adopted a more modern version of the doctrine. "To establish equitable estoppel [in Virginia], it is not necessary to show actual fraud, but only that the person to be estopped has misled another to his prejudice ... or that the innocent party acted in reliance upon the conduct or misstatement by the person to be estopped." *T ... v. T ...*, 216 Va. 867, 872–73, 224 S.E.2d at 152 (citations omitted); *Salem v. Colegrove*, 228 Va. 290, 294, 321 S.E.2d 654, 656–57 (Va.1984); *Lataif v. Commercial Indus. Constr., Inc.*, 223 Va. 59, 63, 286 S.E.2d 159, 161 (Va.1982). The party seeking equitable estoppel must demonstrate a representation, reliance, a change of position, and detriment, "absent a showing of fraud and deception." *T ... v. T ...*, 216 Va. at 873, 224 S.E.2d at 152.

Thus, the modern rule does not require a demonstration of fraud or deceit, and the old rule, that equitable estoppel would not lie if the representations concerned a promise to do something in the future, has been abandoned in Virginia. *Barry v. Donnelly*, 781 F.2d 1040, 1042–43 (4th Cir.1986); *Bedford v. James Leffel & Co.*, 558 F.2d 216, 218 (4th Cir.1977); *In re Jackson*, 98 B.R. 738 (Bankr.D.Md.1986) (following *Barry v. Donnelly* ).[3] The Fourth Circuit in *United States*

---

**2.** To enforce a contract not to be performed within one year in Virginia, the contract must be expressed "in writing and signed by the party to be charged thereby, or his agent; but the consideration need not be set forth or expressed in writing, and it may be proved (where a consideration is necessary) by other evidence." VA.CODE ANN § 11–2(8) (1992). In order for the writing to fulfill the statute of frauds, it must contain the essential terms of the contract. *Reynolds v. Dixon*, 187 Va. 101, 107, 46 S.E.2d 6, 9 (1948).

The letter from Hale to Nargi does not fulfill the writing requirement for the statute of frauds (and neither party claims that it does) because the letter omits the duration of Nargi's employment, an essential term to the contract in view of the dispute between the parties. For three cases in which employer's letters set forth the terms of employment but omitted the duration of employ-

ment, and thus failed to satisfy the statute of frauds, see *Rubin v. Rudolf Wolff Commodity Brokers, Inc.*, 636 F.Supp. 258, 260 (N.D.Ill. 1986) (applying the Illinois statute of frauds); *Anselmo v. Manufacturers Life Ins. Co.*, 595 F.Supp. 541, 546–47 (W.D.Mo.1984), *aff'd*, 771 F.2d 417 (8th Cir.1985) (applying the Missouri statute of frauds); *Lewis v. Finetex, Inc.*, 488 F.Supp. 12, 13–14 (D.S.C.1977) (applying the South Carolina statute of frauds).

**3.** The year before *Barry v. Donnelly* was decided, the Fourth Circuit interpreted *T ... v. T ...* the other way, holding that a misrepresentation was required in Virginia to assert the doctrine of equitable estoppel. *Lance J. Marchiafava, Inc. v. Haft*, 777 F.2d 942, 945 (4th Cir.1985) (citing Williston on Contracts, § 533A at 806 (3d ed. 1960)). *Marchiafava* makes no mention of the

*use of Humble Oil & Ref. Co. v. Fidelity & Casualty Co.*, 402 F.2d 893 (4th Cir.1968), described the modern version of equitable estoppel thus:

> It is not necessary that the representations and conduct should be labelled as fraudulent in a strict legal sense *or that they were made or carried on with an intention to mislead the plaintiff....* A person is estopped from denying the consequences of his conduct where that conduct has been such as to induce another to change his position in good faith or *such that a reasonable man would rely upon the representations made.*

402 F.2d 893, 989 (quoting *Bergeron v. Mansour*, 152 F.2d 27, 30 (1st Cir.1945)). The Supreme Court of Virginia cited *Fidelity* in support of its delineation of the doctrine of equitable estoppel. *T ... v. T ...*, 216 Va. at 873, 224 S.E.2d at 152.

In the case at hand, Nargi is entitled to equitable estoppel to avoid CaMac's assertion that any oral promises for a term of employment are barred by the statute of frauds. The facts must be construed in Nargi's favor on CaMac's motion for summary judgment.

When Hale's letter of July 13, 1990, omitted the term of employment and a promise to purchase Nargi's house, Nargi inquired about the omissions. In return, Nargi was assured that CaMac wanted him "for a long time," and Hale made arrangements for CaMac to buy Nargi's home. Although Nargi's statements concerning his repeated requests

for long-term employment with Hale were not included in Hale's letter, Nargi's version of events is supported by CaMac's fulfilling of the other term omitted from the letter: the acquisition of the Waynesboro residence. This Court finds that Nargi has alleged sufficient representations by Hale to Nargi that CaMac wanted to employ him for a long term, and that Nargi's reliance on those representations was reasonable.

Furthermore, Nargi relied on Hale's statement to his detriment. Nargi asserts in his affidavit that in order to obtain a position with CaMac, he sold his home at a loss, moved his family from a town he enjoyed, ended negotiations on the purchase of a business, and closed his consulting business. In his affidavit, Nargi claims that he would not have moved from Waynesboro if he did not have assurances that he would be employed for at least four years. Nargi also expected to work for CaMac for several years, earning an annual salary of $160,000; however, CaMac terminated him a year and a half after initiating negotiations for his employment.

Nargi has been able to demonstrate the representations, reliance, and detriment required for equitable estoppel under Virginia law, and CaMac is hereby barred from asserting the statute of frauds. *See T ... v. T ...*, 216 Va. at 873, 224 S.E.2d at 152. Without casting any sort of favor upon Nargi's allegations, this Court believes that Nargi will be able to set forth some evidence of a breach of contract. It will be a matter for

---

language in *T ... v. T ...* that states that actual fraud need not be established, nor does it mention the Supreme Court of Virginia's citation to a Fourth Circuit case that sets forth the modern rule of equitable estoppel for the Fourth Circuit. 216 Va. at 873, 224 S.E.2d at 152; *see United States use of Humble Oil & Ref. Co. v. Fidelity & Casualty Co.*, 402 F.2d 893, 898 (4th Cir.1968). *Marchiafava* also does not overturn *Bedford v. James Leffel & Co.*, 558 F.2d 216 (4th Cir.1977), a Fourth Circuit case that interpreted *T ... v. T ...* as *Barry v. Donnelly* later did.

For two district court cases following *Marchiafava* in citing the common law rule of equitable estoppel (without mention of *Barry v. Donnelly*), see *Commonwealth Film Processing v. Courtaulds United States, Inc.*, 717 F.Supp. 1157, 1160 (W.D.Va.1989) and *Owens v. Ashland Oil, Inc.*, 708 F.Supp. 757, 759 (W.D.Va.1989) (employment contract case under facts remarkably similar to the present case).

*Barry v. Donnelly* does not mention *Marchiafava*, and this Court chooses to follow *Barry v. Donnelly*'s interpretation of the Supreme Court of Virginia in *T ... v. T ...* as permitting equitable estoppel despite the lack of misrepresentation of past or present fact. *T ... v. T ...* states that actual fraud is not required to assert equitable estoppel in Virginia, and relies on *Fidelity*, 402 F.2d 893, which clearly adopts the modern version of equitable estoppel. 216 Va. at 873, 224 S.E.2d at 152; *Barry v. Donnelly*, 781 F.2d 1040, 1042–43.

In an unpublished opinion, another judge in this Court also interpreted *T ... v. T ...* as adopting the modern version of equitable estoppel, solely on the basis of the language of that case, and without mention of any federal cases in support of that interpretation. *See Fizer v. Line Power Mfg. Corp.*, No. 92–0005–A, 1992 WL 486945 (W.D.Va. June 10, 1992).

the trier of fact whether or not to construe the evidence in favor of Nargi or in favor of CaMac.

█ Summary judgment cannot be granted if there are genuine issues of material fact. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Here, Nargi asserts that CaMac made certain representations concerning a term of employment, while CaMac's vice president and president both deny making any promises about the length of Nargi's employment. These factual disputes go to the heart of Nargi's claims, and turn on the credibility of the parties—matters inappropriate for summary judgment. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513–14.

## II. *Fraud*

Nargi also brings a claim for fraud against CaMac, alleging that "[CaMac's] agents represented to [Nargi] that his contract would last for four years . . . [u]pon information and belief, [Nargi] alleges that those agents had no present intention to honor those terms. . . . As a result, [CaMac's] agents misrepresented material facts to [Nargi], causing [Nargi] to rely to his detriment." (Pl.'s Compl. at 3.)

█ Virginia recognizes an action for damages on fraudulent inducement to enter a contract. Although a claim of fraud normally requires the misrepresentation of past or present facts, a claim of fraudulent inducement may be based on the breaching party's misrepresentation of his or her intention to perform on the contract. *See, e.g., Elliott v. Shore Stop, Inc.*, 238 Va. 237, 384 S.E.2d 752 (Va.1989); *Sea–Land Service, Inc. v. O'Neal*, 224 Va. 343, 297 S.E.2d 647 (Va.1982). "[T]he gist of the fraud in such a situation is

the fraudulent intent." *Elliott*, 238 Va. at 245, 384 S.E.2d at 756.

The plaintiff must prove the defendant's intent to fraudulently induce him to enter into the contract by clear and convincing evidence. *Elliott*, 238 Va. at 244–45, 384 S.E.2d at 756. In civil cases, if the claim so requires, it is appropriate for the judge to determine on a motion for summary judgment whether or not the plaintiff has set forth clear and convincing evidence of a particular element. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513–14.

█ In the present case, the Nargi has failed to demonstrate clear and convincing evidence of intent to fraudulently induce him to enter into the alleged contract. Nargi is unable to point to any clear evidence that Hale and CaMac lacked intent to fulfill the alleged term employment contract. Accepting all of Nargi's statements in his affidavit as true, his claim is totally lacking in any proof of intent, much less clear and convincing evidence. CaMac's conduct in retaining Nargi on the job for more than a year after their negotiations even negates intent not to perform on the contract at its inception.[4]

Although Hale's representations may have misled Nargi to a level invoking equitable estoppel for CaMac's assertion of the statute of frauds, they do not rise to the level of fraud. Each of Hale's statements: "We want you for a long term," "You can have what you want," and "After two or three years, you will know the business" simply do not embody clear and convincing evidence of fraudulent intent not to perform on those statements, at the time they were made. Nargi has not submitted any evidence of

---

4. *Elliott* and *Sea–Land*, two Virginia cases in which the Supreme Court of Virginia found clear and convincing evidence of intent to support claims for fraudulent inducement, may be distinguished from the facts now before this case. In *Elliott*, the plaintiff employee worked for the defendant under an employment contract that permitted termination only for just cause. The plaintiff was able to demonstrate that her employer falsified the results of a polygraph test she was required to take to retain her position, strong evidence that the employer did not view the contractual conditions of termination seriously.

In *Sea–Land*, an employee was promised that if she resigned from one position, she would be employed in another position. She resigned on a Friday on the assurances of three supervisors, but when she returned to commence her new job on Monday, one of these same supervisors told her she could not have the new position because she was over-qualified. Again, the circumstances in *Sea–Land* strongly suggest that the defendant never had any intention of fulfilling the contract, and sought, by fraud, to induce plaintiff's resignation.

fraudulent intent apart from these statements. Accordingly, judgment is granted for CaMac on CaMac's on Nargi's claim of fraud.

## CONCLUSION

There being a genuine issue of material fact as to whether or not Nargi and Camac entered into an oral employment contract for a term of years, CaMac's motion for summary judgment on Nargi's claim for breach of contract is hereby denied. Having failed to show clear and convincing evidence of CaMac's intent to fraudulently induce him to enter into the alleged contract, judgment is hereby awarded to CaMac on Nargi's claim for fraud.