UNITED PARCEL SERVICE COMPANY and United Parcel Service of America, Inc., Appellants,

v.

John RICKERT, Appellee,

and

John Rickert, Cross–Appellant,

v.

United Parcel Service Company and United Parcel Service of America, Inc., Cross–Appellees.

Nos. 97–SC–715–DG, 98–SC–240–DG.

Supreme Court of Kentucky.

April 22, 1999.

Rehearing Denied Aug. 26, 1999.

Tony C. Coleman, Westfall, Talbott & Woods, Louisville, KY, D. Patton Pelfrey, Winston E. Miller, Charles E. Allen III, Brown, Todd & Heyburn PLLC, Louisville, KY, for appellants/cross-appellees.

Hollis L. Searcy, Claudia K. Grenough, Louisville, KY, Manley N. Feinberg, John Robert Shelton, Louisville KY, for appellee/cross-appellant.

WINTERSHEIMER, Justice.

This appeal is from a decision of the Court of Appeals which affirmed a circuit court jury verdict which awarded Rickert $746,516 in compensatory damages and $1 million in punitive damages on his claims of fraud and promissory estoppel.

The questions presented are whether Rickert proved as a matter of law fraud by clear and convincing evidence; whether there were material representations that were false; whether the representations were known to be false and made with the intent that they be acted upon by Rickert and whether he did act in reliance thereon; whether the evidence presented at trial could be considered as a basis for liability; whether Rickert suffered damages; whether the evidence warranted punitive damages; whether Rickert proved his promissory estoppel claim and whether the statute of frauds is applicable; and whether the trial court erred in directing a verdict against Rickert on his breach of contract claim.

In 1987, United Parcel Service Company and United Parcel Service of America, Inc., hereinafter referred to as "UPS", decided to change its parcel delivery business by establishing its own airline. The transition from contract air cargo carriers to an internal air transport system was not completed until the end of 1988. UPS ultimately hired 811 pilots. During the transition, UPS expressed its desire to hire pilots who remained throughout that period with its contract carriers, including Orion Air, which employed Rickert. Orion ceased operation after the UPS transition. Rickert, a captain with Orion, was not hired by UPS but did obtain employment in the spring of 1989 in a less lucrative position as a second officer with American Airlines.

In his suit, Rickert alleged damages flowing from the breach of contract, promissory estoppel and fraud by UPS based on promises purportedly made by an unnamed UPS management representative in a September 1987 meeting attended by Rickert and 50 to 75 other Orion pilots. During the three-week jury trial, the evidence presented by each side differed considerably regarding whether employment with UPS was guaranteed to pilots who stayed with Orion throughout the 16-month transition period.

Although UPS obtained a directed verdict regarding the Rickert breach of contract claim, the jury awarded Rickert all the compensatory damages claimed, $425,160 in lost wages to the January 1995 trial date plus $321,356 in future lost wages

plus punitive damages in the amount of $1 million. A divided Court of Appeals panel affirmed the judgment. This Court granted discretionary review.

UPS argues that Rickert failed to prove fraud by clear and convincing evidence because he could not identify the corporate representative who allegedly made the fraudulent misrepresentation and cannot establish the authority of that alleged agent to make an unconditional promise constituting the misrepresentation. They maintain that Rickert may not use post-trial briefing and the appellate process to identify such a corporate representative and establish that person's authority to bind the company when neither the representative nor the theory was presented to the trial jury. They also assert that Rickert may not recover on a claim of fraud or promissory estoppel where his failure to act was not a proximate result of the alleged guarantee of employment. They contend that his claim for damages based on more than one year's employment is barred by the statute of frauds and that Rickert may not recover punitive damages without providing the identity and authority of the alleged corporate representative who acted with fraud, oppression or malice. UPS states that this case involves lawsuits filed by 379 pilots who were not hired by the new airline.

## I. Fraud

■ In a Kentucky action for fraud, the party claiming harm must establish six elements of fraud by clear and convincing evidence as follows: a) material representation b) which is false c) known to be false or made recklessly d) made with inducement to be acted upon e) acted in reliance thereon and f) causing injury. *Wahba v. Don Corlett Motors, Inc.,* Ky.App., 573 S.W.2d 357, 359 (1978).

■ As noted by the Court of Appeals, such proof may be developed by the character of the testimony, the coherency of the entire case as well as the documents, circumstances and facts presented. *See Trustees of the First Christian Church*

*v. Macht,* 228 Ky. 628, 631, 15 S.W.2d 509, 510 (1929). Fraud may be established by evidence which is wholly circumstantial. *See Grant v. Wrona,* Ky.App., 662 S.W.2d 227, 229 (1983); *Johnson v. Cormney,* Ky. App., 596 S.W.2d 23, 27 (1979). The standard of review of the jury determination can be found in *Lewis v. Bledsoe Surface Mining Co.,* Ky. 798 S.W.2d 459 (1990). The reviewing court must accept the evidence as true, draw all reasonable inferences from it in favor of the claimant, refrain from questioning the credibility of the witnesses of the claimant and refrain from assessing the weight that should be given to any particular item of evidence. *Lewis, supra,* at 461.

Although Rickert did not specifically identify the individual making the representations at the 1987 meeting, he presented evidence which clearly established that a UPS official was present and addressed the assembled Orion employees, including himself. Circumstantial evidence was introduced from which the jury could believe that the individual in question was Dant, a regional coordinator for UPS. In addition, Rickert presented evidence concerning later communications with UPS which would allow an inference that the alleged representation of employment had been made to him. Rickert testified to the oral promises of employment at the fall meeting. His recollections were clear and he took notes at the meeting concerning seniority and pay which were introduced into evidence. Other witnesses testified that they heard a UPS manager make the same promises at about the same time. UPS challenged the accuracy of the Rickert testimony but made no reference to the other witnesses.

There was also evidence that in July of 1988, Rickert attended an interview with UPS following which he was asked to complete a variety of company personnel documents including a W–4 withholding form. He also took a physical examination.

■■ Although Rickert could not prove that UPS did not intend to hire him individually at the time of the alleged misrep-

resentation, there was significant evidence that UPS did not intend to hire all carrier pilots at the time it made the statement to the assembled Orion personnel. UPS admits that it never intended to hire all carrier flight crew members but claims that it never made a representation to the contrary. Fraud may be committed either by intentionally asserting false information or by willfully failing to disclose the truth. *Chamberlain v. National Life & Accident Ins. Co.*, Ky., 256 Ky. 548, 76 S.W.2d 628, 631 (1934). *See also Restatement (Second) of Torts* § 529 (1977), which indicates that stating a mere partial truth can be fraudulent if it is materially misleading.

UPS knew that the Orion pilots were extremely concerned about their future after Orion lost its UPS contract. The employees were making career decisions and had the right to and should have been told the complete strategy of the employment situation. UPS defrauded Rickert by intentionally failing to tell him all the material facts of its hiring plan. Rickert did not need to demonstrate that UPS did not intend to hire him as an individual. *See generally Restatement (Second) of Torts*, § 534 (1977).

▬▬▬ In Kentucky, a claimant may establish detrimental reliance in a fraud action when he acts or fails to act due to fraudulent misrepresentations. *See Sanford Construction Co. v. S & H Contractors, Inc.*, Ky., 443 S.W.2d 227, 232 (1969). Rickert presented evidence that his reliance on the representation by UPS caused him not to look for employment with other airlines for the period of time from the 1987 meeting until late 1988, and consequently, he lost seniority and benefits because of his failure to obtain other employment sooner. There was also evidence that during this time period other airlines were hiring pilots. A person is entitled to damages resulting from inaction when an untrue statement is made with the intent to induce that person to refrain from acting so long as it can be demonstrated that the false statement produced the inaction. *See generally* 37 Am.Jur.2d *Fraud and*

*Deceit*, § 225 (1969). Here, sufficient evidence was produced to establish a jury question regarding the alleged untrue statements of UPS causing the inaction and the resulting damages. There was evidence presented at trial that indicated the only reason UPS promised Rickert a job was to induce him to fly its planes during the transition period. *Cf. H.C. Hanson v. American Natl. Bank & Trust Co.*, Ky., 865 S.W.2d 302 (1993); *Ligon Specialized Hauler, Inc. v. Smith*, Ky. App., 691 S.W.2d 902 (1985).

The evidence indicates that Rickert was concerned about his job security at Orion when he learned that UPS was terminating its contract with them. He then began to prepare his resume and circulated it to other airlines. He immediately stopped his job search preparations in reliance on what he believed to be the offer by UPS and thereby gave up his option of being employed during the transitional time by another airline. Rickert did not resume his job search until the end of 1988, when he realized that UPS was probably not going to hire him.

## II. Injury and Damage

▬▬▬ The jury properly awarded Rickert damages representing the difference between what he would have earned at UPS from 1988 through the date of the trial as well as future lost wages representing the difference between what he probably would have made at UPS and what he was projected to receive from American Airlines through the date of his mandatory retirement age of 60.

▬▬▬ In an action for fraud, it is not necessary to prove the amount of damages with certainty, but only to establish with certainty the existence of damages. Thereafter the jury may determine the fair and reasonable estimate of the particular injury. *H.C. Hanson, supra. (citing Kellerman v. Dedman*, Ky., 411 S.W.2d 315 (1967).

Here, Rickert introduced sufficient evidence to support a jury finding of damages. The jury heard testimony that Rickert had done an excellent job at American Airlines since May 1989, and there was no reason to believe he would not have performed similarly for UPS. Accordingly, there was a high probability that Rickert would have remained with UPS until his retirement at age 60. Rickert presented a vocational economic analyst who testified as to the amount Rickert would have made at UPS through retirement and what he could reasonably expect to make at American Airlines for a similar period. The jury then simply awarded the difference between these two figures as compensatory damage. In essence, the jury awarded Rickert the benefit of his bargain with UPS as the measure of damages. *See Investors Heritage Life Ins. Co. v. Colson,* Ky.App., 717 S.W.2d 840, 842 (1986); *Dempsey v. Marshall,* Ky., 344 S.W.2d 606, 607 (1961).

We agree with the Court of Appeals that the damages resulting from lost wages were not speculative because the argument presented by UPS regarding at will employees is unconvincing. It is pure speculation to believe that permitting defrauded at will employees to seek legal redress would be tantamount to converting oral promises into guaranteed jobs for life. Any possible plaintiffs would still be required to prove to a jury that they would have in all probability remained employed with a defendant for a definite period of time. *H.C. Hanson* and *Kellerman* provide adequate safeguards against speculative claims of fraud. Under the circumstances of this case, the employee at will doctrine provides no exception to the rule that employer fraud can be actionable.

### III. Punitive Damages

■ We cannot agree with the claim by UPS that the jury should not have been instructed on punitive damages because there was no evidence of fraud. The punitive damage award is proper unless it can be demonstrated that it was the product of undue passion or prejudice on the part of the jury. The award in this case was less than twice the amount of the compensatory damages. Rickert was entitled to have the jury consider punitive damages because he had demonstrated fraud by clear and convincing evidence. KRS 411.184.

■ This suit was tried in 1995 when KRS 411.186(2)(c) clearly permitted the jury to consider the profitability of the misconduct by UPS in assessing whether to award punitive damages. The constitutionality of the statute was never challenged and it does not determine the disposition of this case. *Williams v. Wilson,* Ky., 972 S.W.2d 260 (1998), does not apply. The evidence at trial indicated that UPS in 1987 had earned $750 million on $9.6 billion in revenue. UPS realized that earning such profits in 1988 were contingent partly on minimizing carrier-pilot turnover during the transition period. Rickert proved that the carrier-pilot turnover was high before UPS's public transition announcement but that after the announcement, carrier-pilot turnover greatly diminished or stopped. It was demonstrated at trial that UPS managers acted at the direction of their corporate supervisors and consequently UPS is responsible. *Cf. Davis v. Graviss,* Ky., 672 S.W.2d 928 (1984).

### IV. Promissory Estoppel

■ There was substantial evidence presented at trial that a job promise was made to Rickert and others by UPS with the intent to induce either action or forbearance on the part of the pilots. Rickert testified without contradiction that he relied on this promise and remained with the carrier during the transition. The standard of proof in a promissory estoppel claim is a preponderance of evidence. Rickert met or exceeded that standard when he proved all the elements of fraud with clear and convincing evidence. The trial judge properly held that there was sufficient proof to instruct the jury on this cause of action. *See McCarthy v. Louis-*

*ville Cartage Co.,* Ky.App., 796 S.W.2d 10 (1990).

### V.   Statute of Frauds

■ The Kentucky statute of frauds contained in KRS 371.010(7) is inapplicable to this case because the statute was intended to prevent and not facilitate fraudulent conduct. Rickert fully performed his part of the bargain with UPS, and the agreement between UPS and Rickert could have been fully performed within one year. This court has held in *Harrow v. Johnson,* 60 Ky. 578 (1861), that the law will not permit a plaintiff to take advantage of the statute of frauds for the purpose of committing fraud on the defendant. *See also H.C. Hanson.* Kentucky is with the majority of states in holding that the statute of frauds is not a bar to a fraud or promissory estoppel claim based on an oral promise of indefinite employment. *See Johnson v. George J. Ball, Inc.,* 248 Ill.App.3d 859, 187 Ill.Dec. 634, 617 N.E.2d 1355 (1993); *McIntosh v. George Murphy and Murphy Motors Ltd., a Hawaii Corp.,* 52 Haw. 29, 469 P.2d 177 (Hawaii, 1970); *Frederick v. ConAgra, Inc.,* 713 F.Supp. 41 (D.Mass.1989); *Nargi v. CaMac Corp.,* 820 F.Supp. 253 (W.D. Virginia 1992). UPS cites *Saucedo v. Rheem Mfg. Co.,* 974 S.W.2d 117 (Tex.App.1998); *Leach v. Conoco, Inc.,* 892 S.W.2d 954 (Tex.App.1995) in support of their position. These cases can be distinguished and we do not find them convincing or persuasive authority here.

■ Rickert fully performed his part of the bargain with UPS by continuing to fly for Orion and UPS during the transition time. In addition, the agreement between UPS and Rickert could have been performed within one year. If an agreement is capable of being performed within a year, then it does not fall within the statute of frauds. *Audiovox Corp. v. Moody,* Ky.App., 737 S.W.2d 468, 470 (1987). Although the transition period was more than a year, UPS was capable of hiring Rickert at any time and thereby performing its part of the bargain. There was evidence that UPS hired 418 contract carrier pilots during the 18–month transition.

We agree with the Court of Appeals that it is not necessary to address the issues raised by Rickert's cross-appeal because of the result we have reached.

The decision of the Court of Appeals is affirmed.

LAMBERT, C.J., GRAVES, JOHNSTONE, STUMBO and WINTERSHEIMER, JJ., concur.

STEPHENS, J., files a separate dissenting opinion in which COOPER, J., joins.

STEPHENS, Justice, dissenting.

I respectfully dissent. It is my belief that Rickert cannot recover compensatory damages based on the benefit of his alleged bargain with UPS under either a contract or promissory estoppel theory.

As the majority notes, Rickert did not establish the existence of an oral contract for employment between UPS and him. Rather, as Rickert stated in his testimony, UPS merely offered him a "chance" of employment if he chose to remain with his contract carrier, Orion Air, through the transition period; he could not prove that UPS intended to hire him. Further, he presented no evidence demonstrating that UPS, at its 1987 meeting with the Orion Air pilots, intended anything more than to offer Rickert and the other pilots a preferred opportunity to interview for a job with UPS. While it is undoubtedly true that UPS desired to retain the services of the contract carrier pilots pending institution of its own service, it is also abundantly clear that not all of the carrier pilots would be employed by UPS, only those who successfully completed the hiring process. Accordingly, Rickert was unable to persuade the jury that an oral contract existed for any term of employment and, as a result, UPS obtained a directed verdict regarding Rickert's breach of contract claim.

Nonetheless, and somewhat incongruously, the jury awarded compensatory damages to Rickert based upon his claim for breach of an alleged 18–year oral employment contract. Even if UPS fraudulently induced Rickert to remain in Orion Air's employ during the transition period, the damages awarded him were excessive. As the majority notes, Rickert asserted that had he been hired he would have remained a UPS employee until his retirement at the FAA-mandated age of 60. It is pure speculation to say that because Rickert has been a successful second officer at American Airlines that he also would have been a successful captain, which is a higher-ranking and perhaps more responsible position, at UPS. At the same time, Rickert admitted that UPS would have had the right to fire him at any time, for any reason, after commencement of his alleged employment agreement. Such indefinite "permanent" employment constitutes employment at-will in Kentucky. *Cf. Shah v. American Synthetic Rubber Corp.*, Ky., 655 S.W.2d 489, 492 (1983) (stating that unless the parties clearly express their intention to alter the at-will relationship, "even though they speak in terms of 'permanent' employment—the parties have in mind merely the ordinary business contract for continuing employment, terminable at the will of either party").

Thus, contrary to the majority's view, computing damages by awarding Rickert the "benefit of his bargain" with UPS effectively permits Rickert, who would have at most been an at-will employee, to seek legal redress by converting oral promises into a guaranteed job for life. Moreover, an 18–year oral contract for employment would have been unenforceable under the Statute of Frauds:

No action shall be brought to charge any person ... [u]pon any agreement that is not to be performed within one year from the making thereof ... unless the promise, contract, agreement, representation, assurance or ratification, or some memorandum or notice thereof, be in writing and signed by the party to be charged therewith, or by his authorized agent.

KRS 371.010(7).

Since an oral 18–year employment contract would have been unenforceable and since Rickert admits that any employment relationship he might have had with UPS would have been at-will and its duration speculative, compensatory damages should not have been calculated based upon the contract's theoretical existence. The purpose of Rickert's action was not to recover for services already performed, but to recover damages which he claimed he had suffered in consequence of the breach of the oral contract. At most, he should have been awarded actual sums expended and compensation for time employed in preparing to begin work.

In an analogous case, *Courier–Journal Co. v. Miller*, Ky., 50 S.W. 46, 47 (1899), the Courier–Journal entered into an oral employment contract with Miller that would have continued as long as Miller's services were satisfactory to the Courier Journal. Before Miller began work, however, the Courier–Journal notified him that his employment would be indefinitely postponed and that it would "be best not to let the thing now interfere with [his other job] arrangements." Miller sued the Courier–Journal for damages. We held that the

[Courier–Journal] could discharge [Miller] at any time without cause, and there would, from the date of discharge, be no further liability. However, if there was [an oral] contract made, [Miller] would be entitled to recover the actual sums expended and compensation for the time necessarily employed in making preparation to begin the work. *There is no element of damage save compensation for actual outlay of time or money up till notice that the contract would not begin....*

*Id.* at 47 (emphasis added). For the same reasons, Rickert should not be allowed to base his damages on an at-will oral contract that would have, had it existed, violated the Statute of Frauds.

The result would be the same even if Rickert based his claim for compensatory damages purely on promissory estoppel, for an aspiring employee cannot sue for lost wages on an unfulfilled promise of at-will employment. *Cf. Louisville & N.R. Co. v. Wells,* 289 Ky. 700, 160 S.W.2d 16, 18 (1942) (holding that, absent a specific term, an unfulfilled promise of at-will employment is too vague to support an award of compensatory damages.) Because the UPS could have terminated Rickert without cause at any time after the employment began, the promise of a job brought no expectation of any determinable period of employment or corresponding amount of wages.

A review of the case law of our sister states is instructive in this matter. In *Pepsi–Cola General Bottlers, Inc. v. Woods,* 440 N.E.2d 696 (Ind.App.1982), the Indiana Court of Appeals recognized a right of action for promissory estoppel where Woods quit her former job in reliance upon an oral promise of employment with Pepsi. Before she could begin work, however, Pepsi informed her that she would not be hired. Woods sued for damages under the theory of promissory estoppel.

Noting "the problem here to be the measure of recovery," the court stated:

> Under the promissory estoppel theory as stated in § 90 of the Restatement of Contracts, the promise which induces action [or forbearance] is binding if injustice can be avoided only by enforcing the promise. The promise which Woods seeks to enforce is an employment contract of indefinite tenure which is unenforceable for vagueness. The only thing, under law, that Pepsi promised was that Woods could work for Pepsi until either party decided to terminate their relationship.... [W]e have no way to determine the amount of wages to which Woods was entitled, since under the circumstances Pepsi could have discharged her after a single day's work without incurring liability.

*Id.* at 699. The court thus held that a claim based on promissory estoppel entitled Woods only "to damages for expenses incurred in reliance on Pepsi's promise," and the court found "there was not sufficient proof of out-of-pocket expenses." *Id.* *See also Lorson v. Falcon Coach, Inc.,* 214 Kan. 670, 679–80 522 P.2d 449 (Kan.1983) (holding that plaintiff's detrimental reliance on oral promises of employment would sustain an action for damages for moving expenses and storage costs, but not lost wages.)

Rickert could not prove detrimental reliance on an oral promise of employment for a definite term. He should not be awarded damages based on the existence of an unenforceable 18–year oral employment contract, the term of which would be speculative at best.

COOPER, J., joins in this dissenting opinion.